HOWARD MUNNIKHUYSEN, Executor of EMILY W. MAGRAW, *vs.* HENRY S. MAGRAW and EMILY H. MAGRAW, by their next friend, JAMES M. MAGRAW.

HOWARD MUNNIKHUYSEN *vs.* ADAM R. MAGRAW, Administrator *pendente lite.*

*Caveat to a Will—Issues transmitted by the Orphans' Court for trial by a Jury—Appointment of an Administrator pendente lite when the validity of a Will is contested—Article 93, section 68, of the Code, construed.*

A paper purporting to be the last will and testament of M, was admitted to probate in common form without contest, and letters testamentary thereon were granted by the Orphans' Court to the executors named in the will. Subsequently, two infant children of the testatrix, by their next friend, filed a petition and *caveat,* alleging that the paper purporting to be the last will and testament of their mother was not in fact and in truth her will, and requiring full and particular proof of the execution thereof. The petition stated specific grounds of caveat, and prayed that the probate might be annulled and set aside, and the letters testamentary revoked. To this petition an answer was filed by one of the executors, admitting the allegations therein, and uniting in the prayer of the petitioners to have the admission of the will to probate again heard and examined, and the order admitting the same to probate, rescinded. The other executor likewise answered, denying that the paper writing was other than the true last will of the testatrix, and averring that it was formally executed by her, as required by law, and that in the presence of a witness she declared that she had read said paper, that she understood it, and that it truly expressed her wishes. The respondent answered the several matters alleged in the petition, and prayed that it might be dismissed, and the will fully executed under the direction of the Orphans' Court. Shortly afterward the caveators filed their petition, praying that the questions at issue upon their *caveat* to the will, and the answers thereto, might be transmitted to the Circuit Court for trial, and proposed the following issues :

1st. Was the paper writing purporting to be the last will and testament of M, executed and attested in due form as required by law ?

2d. Were the contents of said paper writing fully explained to, or known, or understood by M, before or at the time the same is alleged to have been signed by her?

3d. Was the said alleged will drawn in conformity with the instructions of the said M.

The caveatee agreed to the first issue, but objected to the second and third, and suggested, in lieu of the second, the following:

" Were the contents of said paper writing read to, or by the said M, or known to her, at or before the time of the alleged execution of said paper writing?"

Subsequently, the caveatee submitted to the Orphans' Court the two following issues:

" What part or parts, if any, of the said paper writing were unknown to or misunderstood by the said M, before or at the time when the same was executed?"

" What part or parts, if any, of the said paper writing are contrary to the instructions of the said M?"

The Orphans' Court refused to send up the issues presented by the caveatee, and directed that the issues presented by the caveators be transmitted for trial to the Circuit Court. Afterwards, the caveatee submitted five issues, embracing those already presented by him, and prayed that they might be sent to the Circuit Court for trial. The Orphans' Court refused to send these issues to the Circuit Court, upon the ground that they were substantially the same as those already transmitted. On appeal by the caveatee, HELD:

1st. That the issues proposed by the caveatee were not substantially the same as those presented by the caveators, and transmitted to the Circuit Court for trial by a jury.

2d. That it being conceded that M was of sound mind, capable of making a will, if it appeared that the paper writing purporting to be her last will had been in her possession, read and examined by her before it was executed, or that it had been read to her and approved by her, it was immaterial for the jury to inquire whether its contents and meaning had been fully explained to her, or whether she understood them. Such knowledge and understanding would be presumed and imputed to her by the law.

3d. That if the contents of the will were known to the testatrix when she signed it, it would be immaterial to inquire whether it had been drawn in all respects according to instructions before given to the draftsman;

Munnikhuysen *vs.* Magraw.

even if those instructions had been departed from in some particulars, that would not vitiate the will, if the fact were known to and approved by the testatrix when she signed it.

4th. That the following were the proper issues between the parties, and those which ought to have been transmitted to the Circuit Court for trial:

1. Was the paper writing dated the 26th October, 1869, purporting to be the last will and testament of the said M, executed and attested in due form as required by law?

2. Were the contents of the paper writing, purporting to be the last will and testament of M, read to, or by her, or known to her, at or before the time of the alleged execution thereof?

3. What part or parts, if any, of said paper writing were unknown to, or misunderstood by M,.at the time of the alleged execution thereof?

4. What part or parts, if any, of said paper writing are contrary to the instructions of the said M?

5. Is the said paper writing, bearing date the 26th of October, 1869, the last will and testament of M?

Section 68, of Article 93, of the Code, authorizing the Orphans' Court, when the validity of a will is contested, to appoint an administrator *pendente lite,* applies to cases where the will has not been admitted to probate, or where letters testamentary have not been granted, or, if granted, have been revoked.

Where a will has been admitted to probate, and letters testamentary granted, and the executor has qualified, and his letters remain unrevoked, the Orphans' Court has no power to appoint an administrator *pendente lite.*

The effect of a *caveat* to a will, and the sending of issues for trial to the Circuit Court, is not to revoke the probate or suspend the powers of the executor. These remain to await the final action of the Orphans' Court after the trial and verdict upon the issues.

APPEALS from the Orphans' Court of Cecil County.

The causes were argued before BARTOL, C. J., STEWART, BRENT, GRASON, ALVEY and ROBINSON, J.

*Henry W. Archer* and *Henry D. Farnandis,* for the appellant.

*John P. Poe* and *Alexander Evans*, for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

These appeals are from orders of the Orphans' Court of Cecil County; the first brings before us for review, the action of that Court, with respect to the issues proposed by the respective parties, to be sent to a Court of Law for trial; and the second is from an order appointing the appellee, Adam R. Magraw, administrator *pendente lite* of Emily W. Magraw.

By consent of counsel, the records in the two appeals were referred to in the argument as one record, and will be so considered in disposing of the cases.

It appears that on the 13th day of April, 1870, the last will and testament of Emily W. Magraw, deceased, was presented by the appellant and Adam R. Magraw, the executors therein named, to the Orphans' Court of Cecil County, and was admitted to probate in common form without contest, and on the 28th day of the same month, letters testamentary thereon were granted to the executors named in the will, who proceeded to qualify and gave bond according to law.

On the first day of December, 1870, a petition and *caveat* was filed by Henry S. Magraw and Emily H. Magraw, infants, by James M. Magraw, their next friend, alleging that the petitioners and their brother, Adam R. Magraw, of Cecil County, are the only children and heirs at law of Emily W. Magraw, deceased.

The petition further alleges that the paper writing purporting to be the last will of Emily W. Magraw, deceased, and which had been admitted to probate, is not in fact and in truth her will and testament; that the petitioners have no personal knowledge whether the same was formally executed in the mode required by law, and cannot therefore admit that it was, and are advised that it is their right to require full and particular proof of the execution thereof.

The petition then states certain specific grounds of *caveat*, which need not be here set out at length, and prays that the probate may be annulled and set aside, and that the letters testamentary may be revoked.

To this petition an answer was filed by Adam R. Magraw, one of the executors, admitting the allegations therein, and uniting with the petitioners in "their application that the matter of said pretended last will and testament, and the reception and admission thereof to probate, may be again heard and examined, and the order admitting the same to probate may be rescinded."

The answer of Howard Munnikhuysen, the appellant, denies that the paper writing "is other than the true last will of Emily W. Magraw, in fact and truth, and avers that it is her true last will and testament; that it was by her formally executed as required by law, at the time, in the manner, and in the presence of the witnesses, as stated in said paper; and that before such formal execution, she declared, in the presence of R. B. Taney Campbell, that she had read the said paper, that she understood it, and that as drawn it truly expressed her wishes." The respondent then goes on to answer the several matters alleged in the petition, setting out fully and particularly the circumstances attending the preparation and execution of the will, and avers "that whilst the names of the said infant children are used as actors in this proceeding, it is in fact instituted and promoted in the interest and for the benefit of Adam R. Magraw, in utter disregard of the rights and interests of the petitioners and to their great loss and injury, if the *caveat* could be sustained, and the provisions carefully and anxiously made by their mother for their advantage annulled." And prays that the petition may be dismissed, and the will fully and faithfully executed under the supervision and direction of the Orphans' Court.

On the 20th day of January, 1871, the caveators filed their petition, praying that the questions at issue upon their *caveat* to the will and the answers thereto, be transmitted for trial

to the Circuit Court for Cecil County; and proposed the following issues:

1st. Was the paper writing bearing date the 26th day of October, 1869, and purporting to be the last will and testament of said Emily W. Magraw, executed and attested in due form as required by law?

2d. Were the contents of said paper writing fully explained to, or known, or understood by said Emily W. Magraw before or at the time the same is alleged to have been signed by her?

3d. Was the said alleged will drawn in conformity with the instructions of the said Emily W. Magraw?

On the 20th day of February, 1871, the caveatee (Munnikhuysen,) filed an answer to the petition, agreeing to the first issue, and objecting to the second and third as "improper in the shape proposed, as calculated to mislead the jury and to raise and present improper and immaterial issues," and praying that the same be withheld or modified, and suggesting as the true question so to be sent, in lieu of the second issue, the following, viz:

"Were the contents of said paper writing read to, or by the said Emily W. Magraw, or known to her at or before the time of the alleged execution of said paper writing?"

On the 14th day of March thereafter, the caveatee submitted to the Orphans' Court the two following issues, viz: "What part or parts, if any, of the said paper writing were unknown to, or misunderstood by said Emily W. Magraw, before or at the time when the same was executed? What part or parts (if any) of said paper writing are contrary to the instructions of the said Emily W. Magraw?"

On the 15th day of March following, the Orphans' Court refused to send up the issues presented by the caveatee and passed an *order* directing that the issues presented by the caveators be transmitted for trial to the Circuit Court.

Afterwards, on the 21st day of the same month, the caveatee submitted the following issues, and prayed that they be sent to the Circuit Court for trial:

1st. Were the contents of the paper writing mentioned in the proceedings in this case, and purporting ito be the last will and testament of Emily W. Magraw, bearing date the 26th day of October, 1869, read to, or by the said Emily W. Magraw, or known to her at or before the time of the alleged execution thereof?

2d. Was the said Emily W. Magraw, at the time of the alleged execution of said paper writing, of sound and disposing mind, memory and understanding, and capable of executing a valid will?

3d. What part or parts (if any) of said paper writing were unknown to, or misunderstood by said Emily W. Magraw, at the time of the alleged execution thereof?

4th. What part or parts (if any) of said paper writing are contrary to the instructions of said Emily W. Magraw?

5th. Is the said paper writing, bearing date the 26th day of October, 1869, the last will and testament of said Emily W. Magraw?

Whereupon the Orphans' Court, on the 29th day of March, 1871, passed an order refusing to send the said last named issues, presented by the appellant, to the Circuit Court for trial, upon the ground that all the issues raised by the *caveat* and the answers thereto, had already been transmitted to the Circuit Court for trial, which are substantially the same as those asked for by the appellees.

From the orders of the 15th and 29th days of March, 1871, this appeal was taken.

It has been settled by the decisions of this Court in the cases of *Pegg vs. Warford,* 4 *Md.,* 385, and *Warford vs. Van Sickle,* 4 *Md.,* 397, that "when an issue is once granted, the functions of the Orphans' Court, so far as that question is concerned, are suspended until the finding of the jury be certified," * * * * "and the granting, on the application of another party, of substantially the same issue would be a nullity," and ought not to be allowed. The appellees con-

tend that under this rule the orders of the Orphans' Court were correct, and ought to be affirmed.

In our opinion the issues proposed by the caveatee are not substantially the same as those presented by the caveators, and which were allowed by the Orphans' Court, and directed by the order of the 15th day of March, 1871, to be transmitted for trial.

But the main question to be decided is, whether the three issues proposed by the caveators, and actually transmitted for trial, presented fairly the substantial questions between the parties, and proper for the consideration of a jury, in order to determine the validity of the will.

The first issue raising the question of the due and proper execution of the paper, as the last will of Mrs. Magraw, was proper and no objection was made to it by the appellant.

The second issue, it seems to us, in the form in which it was presented, was objectionable as " calculated to mislead the jury, and to raise and present improper and immaterial questions."

It being conceded that the testatrix was of sound mind, capable of making a will, it follows that if the paper had been in her possession, read and examined by her before it was executed, or read to her and approved; it is wholly immaterial for the jury to inquire whether its contents and meaning had been fully explained to her, or whether she understood their meaning and effect. Such knowledge and understanding would be presumed, and imputed to her by the law, if she knew the contents of the will.

If she knew and understood what the actual contents of the will were, that would be sufficient, although in point of fact she may have had some erroneous opinions with regard to their legal effect and operation. Sane persons when they express themselves in writing, are presumed to mean what the writing imports, and it would be dangerous and in plain violation of the Statute of Frauds, to allow it to be impeached or overthrown by evidence *aliunde,* showing that they meant

something else, or did not understand its true import and operation.

But if the second issue is to be understood as simply raising the question, whether the contents of the will were actually known to the testatrix when she executed it; then it was certainly proper that the caveatee should have been allowed to present to the jury the distinct question as to what part or parts of the will (if any) were unknown to, or misunderstood by the testatrix, at the time it was executed.

The same objections exist to the third issue presented by the caveators. If the contents of the will were known to the testatrix when she signed it, it would be quite immaterial to inquire whether it had been drawn in all respects according to instructions before given to the draftsman; even if those instructions may have been departed from in some particulars; that would not vitiate the will, if the fact were known to and approved by the testatrix when she signed it. But if it was proper for the jury to inquire whether the will was drawn in conformity with instructions; then the caveatee was entitled to present the question as to what part or parts of the will (if any) were not drawn according to the testatrix's instructions; otherwise, the jury might find the second and third issues in favor of the caveators, by reason of any one of the provisions of the will, being misunderstood by the testatrix, or being contrary to her instructions, although all the rest of the will might be free from such objection; and thus the whole will be set aside on account of some trivial error or mistake of the draftsman in any one of its provisions.

For these reasons, we think the Orphans' Court erred in passing the order of the 15th of March, transmitting for trial the second and third issues, in the form in which they were proposed by the caveators.

We are further of opinion that the proper issues between the parties, and those which ought to have been transmitted for trial are as follows:

The first issue presented by the caveators, raising the question of the execution of the will, and the *first, third, fourth* and *fifth* issues proposed by the caveatees on the 21st day of March, 1871. These five issues properly present the questions to be submitted to the jury.

The second issue presented by the appellant, raises the question of the mental capacity of the testatrix; but that was not denied or questioned by the *caveat*, and ought not to be submitted to the jury. Being conceded, the case would of course be tried before the jury, upon the concession that the testatrix was of sound mind, capable of making a valid will, and no evidence of the contrary would be admissible.

Being of opinion that the Orphans' Court erred in passing the orders of the 15th and 29th of March, 1871, those orders will be reversed, and this case will be remanded in order that the several issues which we have indicated as proper, may be transmitted for trial, and further proceedings be had in conformity with this opinion.

*Orders reversed and*
*cause remanded.*

(Decided 13th March, 1872.)

After the proceedings above referred to had taken place, the Orphans' Court, upon the petition of Adam R. Magraw, by its order, dated the 9th day of May, 1871, appointed him administrator, *pendente lite*, of Emily W. Magraw, and from that order this appeal was taken.

The order was passed *ex parte* and without notice. The petition did not pray for the revocation of the letters testamentary before granted to the appellant, and Adam R. Magraw, the executors named in the will, and they were not revoked, but were left in full force.

The Orphans' Court seem to have proceeded upon the opinion that the effect of the *caveat*, and sending the issues for trial, was to suspend the operation of the will, and the powers of the executors thereunder, and that the case had

arisen, provided for by Article 93, section 68, of the Code, whereby the Orphans' Court is authorized, when the validity of a will is contested, to appoint an administrator pending the contest.

In this view that Court was clearly in error. That section applies to cases where the will has not been admitted to probate, or where letters testamentary have not been granted, or if granted, have been revoked.

Where the will has been admitted to probate, and letters testamentary actually granted, the executors have qualified, and their letters remain unrevoked, the Orphans' Court have no power to appoint an administrator *pendente lite.*

The effect of such an order would be to create the greatest confusion in the administration of the estate; for there would be different and opposing parties, both clothed with the powers of administration at the same time.

The effect of the *caveat,* and the proceedings thereunder, was not to revoke the probate, or suspend the powers of the executors. These remain, to await the final action of the Orphans' Court, after the trial and verdict upon the issues.

We will pass an order reversing the order of the Orphans' Court, passed on the 9th day of May, 1871, appointing Adam R. Magraw administrator *pendente lite.*

*Order reversed.*

(Decided 13th March, 1872.)