## JOSEPH C. NAUDAIN *vs.* JOSEPH COUDON, Executor.

*Wills—Caveat—Presumption as to Knowledge of Contents of Will by Testator—Instructions to the Jury.*

Under a caveat to a will the issue submitted to the jury was whether the testratrix understood the contents of the will at the time of executing it. There was affirmative proof in the case that she did have such knowledge. At the instance of the caveator the jury were instructed that the defendant was bound to satisfy them, that the testatrix understood the contents of the paper propounded as a will, and unless so satisfied, their verdict must be for the caveator. At the instance of the defendant the jury were instructed that if the testatrix executed the paper offered in evidence as her will in the manner testified to by the subscribing witnesses, and also find that on the evening before the will was executed, the same was read over to her, and shall also find that at the time of the execution of the will she was capable of understanding the business in which she was engaged, and to execute a valid deed or contract, then the legal presumption is that she knew and understood the contents of said paper. This instruction was granted in connection with the first mentioned instruction. *Held*, that by these two instructions taken together the law applicable to the case was properly laid down.

Appeal from the Circuit Court for Cecil County (PEARCE, C. J., and MARTIN, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, SCHMUCKER and JONES, JJ.

*Albert Constable* (with whom was *W. S. Evans* on the brief), for the appellant.

We concede the law that, in the case of a competent testator, his knowledge and approval of the contents of the document he has executed as his will is, as a general rule, to be inferred from the fact of its execution, and that, in the absence of evidence tending to impeach such inference as unreliable and unsatisfactory in view of the facts and circumstances of the particular case, the law regards it as

conclusive. But, as there also stated, it is equally true that, where a testator is of impaired mind, though not incompetent, or circumstances surround the preparation or execution of an alleged will, which excite a well-grounded suspicion that the testator did not really know and approve the contents, the formal execution of the document ceases to be a satisfactory basis for the inference; that the law, in such cases, demands proof beyond the mere act of formal execution, and that direct proof that the deceased clearly understood and fully intended to make that disposition of his property which the document purports to direct, must be furnished by the party propounding it as his will.

It was not denied in the Court below, nor could it be in the light of the authorities, that the plaintiff had brought forward such a body of evidence as to Mrs. Naudain's capacity, and as to the circumstances attending the preparation and execution of her alleged will, as made a grave question of fact for the jury on the fourth issue. It was a question to be answered by evidence, not by legal presumptions. And this being so, the jury should have been permitted to answer the question unembarrassed by the injection into their deliberations of legal presumptions of knowledge and understanding, as was done by this 9th prayer; inasmuch as the rule of law by which the proponent of a will gets, *prima facie*, the benefit of a legal presumption of knowledge and approval from mere capacity and bare execution, had no application to this case as it stood when the 9th prayer was offered. No doubt, had the evidence been closed when defendant rested, after proving Mrs. Naudain's formal execution of the paper, the rule could have been properly applied. He would then have had a presumption of capacity, and he would also have proved Mrs. Naudain's execution of the paper. The combined effect of capacity as thus established, and the proof of formal execution of the paper, was such as to entitle him to the legal presumption that Mrs. Naudain understood and approved the contents of the document.

But this preliminary proof, at that stage of the case, did not shift the *onus* of satisfying the jury under the fourth issue that Mrs. Naudain understood and approved the contents of the document.   That *onus* still rested on the defendant, though, through the medium of an unrebutted presumption of capacity and proof of execution, he had succeeded at that stage of the case, in making *prima facie* proof of it.   Had the plaintiff called no evidence, this *prima facie* case he had made would have been conclusive.   But the plaintiff *did* call evidence, and the effect of that evidence was such as to show, that defendant's *prima facie* case for establishing Mrs. Naudain's understanding and approval, which rested merely on an unrebutted presumption of capacity and proof of formal execution, was not a *sufficient* compliance with the *onus*.

(1.) That being so—plaintiff having brought into the case that body of evidence which we have before described impeaching as unreliable and unsatisfactory in this case, the inference that Mrs. Naudain understood and approved the contents of this alleged will merely because she had executed it—defendant was compelled, notwithstanding he had at an earlier stage of the case, been apparently entitled to go before the jury resting upon a mere inference as constituting a *prima facie* proof, to bring forward direct, affirmative evidence to the fact.   What then is that direct, affirmative evidence which he brings ?   It is that the night before the paper was executed Nelson Whitaker read it to Mrs. Naudain.   This, no doubt was, if true, an important piece of evidence for the defendant in sustaining his burden of proving that Mrs. Naudain really understood and approved the paper.   The defendant, however, was not satisfied with its intrinsic probative force as a fact, but sought in this 9th' prayer to obtain for it an additional, artificial force beyond what the jury might be disposed to consider its intrinsic value.   He, therefore, asks this 9th instruction in which he states this fact together with her capacity and formal execution of the paper and says, not

that the jury from those facts may find that Mrs. Naudain knew and understood the contents of the paper but——that " then the legal presumption is that she knew and understood the contents of said paper." That is to say, the defendant, although he had introduced evidence tending to prove that Mrs. Naudain had the capacity necessary to execute the document, that it was read over to her and that she had executed it, and had done this for the purpose of proving as a fact that Mrs. Naudain did really understand and approve the document, undertook by this instruction, to *substitute* a legal conclusion for an affirmative finding of the fact. But the case had become one where the testatrix's understanding and approval were to be established as a fact, not a legal conclusion, and by direct, affirmative proof, not by mere inference.

(2.) One effect of this 9th instruction was to enable the jury to evade deciding, if they wished to do so, whether Mrs. Naudain did in fact really understand and approve of the contents of the alleged will. No doubt they were told by plaintiff's 4th prayer that the defendant had the burden of satisfying them that Mrs. Naudain understood the contents of the paper, and that unless the jury were so satisfied the verdict must be for the plaintiff on the 4th issue. But they were not told in what manner, or by what evidence. the defendant must satisfy them.

(3.) What conceivable right had defendant to group certain facts which his evidence tended to prove——ignoring other facts which plaintiff's evidence tended to prove——and call on the Court to *emphasize them* and not only so, but to say to the jury that, in addition to their intrinsic probative force, the law gave them an artificial force and raised a legal presumption in favor of the truth of the fact they tended to prove ?

(4.) The introduction into this prayer of the term legal presumption is altogether misleading. Even if we concede it was proper, which it was not, to instruct the jury that they might *infer* the ultimate fact of understanding and ap-

proval—in face of the evidence that this lady's mind was most seriously impaired and that suspicious circumstances existed in this case calling loudly for the utmost vigilance—it was not proper to speak of such inference of fact which the jury might draw, as a legal presumption, which is something the law draws without the aid of a jury.

(5.) Where the case is one of impaired mind in connection with suspicious circumstances, the law is, not only that there is no legal presumption of the testator's understanding and approval but, that the jury *ought not to be permitted to infer* from such facts as are stated in this 9th prayer, such understanding and approval. *Yardly* v. *Cuthbertson*, 108 Pa. St. 305; *Cuthbertson's Appeal*, 97 Pa. St. 171. In most of the cases the suspicious circumstance occurring was that the person preparing the will was the person taking a benefit under it. But the *nature* of the circumstances which ought to excite the vigilance of the Court and call upon those who propound it as a will for evidence more than the mere inference to be derived from a mere formal execution, can make no manner of difference. *Tyrrell* v. *Painton*, Law Rep. [1894] Probate, 151.

(6.) Whether the reading over of the will did or did not bring home to Mrs. Naudain an intelligent apprehension of this 26th paragraph was an inference which the jurors were entitled to draw or not according to what they believed to be the condition of her mind at the time, the dialect in which that paragraph was expressed, and the manner in which that reading over had taken place. *Fulton* v. *Andrew*, L. R., 7 Eng. and Irish App. 448.

(7.) The prayer fails to negative the suspicious circumstances which had displaced it. If the evidence brought forward by the plaintiff tended to prove that Mrs. Naudain's mind was impaired, and also, that there were circumstances surrounding the preparation and execution of the document, which raised a well-grounded suspicion that it did not express her true will, then the prayer ought to have been submitted to the jury to find whether that suspicion had

been removed. The theory of the prayer is, that the legal presumption, to be established by the finding of the facts stated therein, sustains the *onus* resting upon defendant, consistently with a full conviction on the part of the jurors that every fact, which the plaintiff's evidence had tended to prove, had been established. But that would be absurd, and is contradicted by the language of every authority upon the subject. *Barry* v. *Butlin*, Moore, P. C. 482; *Tyrrel* v. *Painton* [1894], Probate, 157; *Ingram* v. *Wyatt*, 1 Hagg. 384.

*John S. Wirt*, for the appellee.

We concede the principle that knowledge and approval of the contents of an alleged will by the testator are part of the burthen of proof assumed by one who propounds it as a will. This burthen is satisfied, *prima facie*, in the case of a competent testator by proving that he executed it. If this *prima facie* case, however, is met by proof to the contrary, then the party propounding the paper must satisfy the tribunal affirmatively that the testator did know and approve of the contents of the will before it can be admitted to probate. *Cleare and Fowler* v. *Cleare*, L. R. 1 Probate and Divorce, 655; *Taylor* v. *Cresswell*, 45 Md. 427. The 9th prayer of the defendant and the 4th prayer of the plaintiff taken together, we think, exactly conform to the decisions above cited.

The defendants below did not rest upon the legal presumption as stated in defendants' 9th prayer, but offered affirmative proof that the testatrix did in fact understand the contents of the will, especially the 26th clause thereof, making provision for her husband. Nelson E. Whitaker testifies that Mrs. Naudain understood the instructions she gave him, and that when the will was read over to her the evening before its execution she thoroughly understood it. He states that there was discussion between them as to the provision for her husband, that she understood it and that it was entirely her own suggestion. This statement is made

again and again.    Here was positive affirmative proof that
the testatrix understood the contents of the will, especially
the provisions with reference to her husband.

The whole contention of the plaintiff was that owing to
her enfeebled condition Mrs. Naudain could not understand
the technical and involved language of clause 26 of the
will.    But there is no testimony to support this contention
which is mere matter of speculation.    There is no proof of
" suspicious circumstances," and nothing whatever to im-
peach the testimony of Nelson E. Whitaker, who is very
clear in his statements.    In the absence of affirmative testi-
mony that Mrs. Naudain did not understand her will the
Court will not enter into a discussion of how far she under-
stood and appreciated the meaning and bearings of particu-
lar provisions of her will.    As was well said by Sir J. P.
Wilde in *Atter* v. *Atkinson*, L. R. 1 P. & D. 665, if Courts
permitted such discussions they would upset half the wills
in the country.

Briscoe, J., delivered the opinion of the Court.

This case was tried in the Circuit Court for Cecil County,
upon issues sent from the Orphans' Court of that county
under a caveat by the appellant to the will of Mrs. Caroline
Naudain, of Cecil County.    There were five issues upon
which the case was submitted to the jury, but the fourth is
the one with which we are principally concerned here.    It
is as follows :    Whether the said Caroline Naudain at the
time of the execution of the paper-writing, dated the 12th
of June, 1895, understood the contents of said paper-
writing.

The prayers on both sides were conceded at the trial,
except the defendant's ninth prayer, and an exception to the
granting of this prayer presents the questions to be passed
upon on this appeal.    By the ninth prayer the jury were
instructed, that " if Mrs. Caroline Naudain executed the
paper offered in evidence as her will in the manner testified
to by the subscribing witnesses, and also find that on the

evening before the will was executed Nelson E. Whitaker read the same over to her, and shall also find that at the time of the execution of the will she was capable of understanding the business in which she was engaged and of executing a valid deed or contract, then the legal presumption is that she knew and understood the contents of said paper." And this prayer was granted in connection with the plaintiff's fourth prayer, which reads thus: " That the defendant was bound under the fourth issue, to satisfy the jury that Mrs. Caroline Naudain understood the contents of the paper dated the 12th of June, 1895, and unless the jury are so satisfied, the verdict must be for the plaintiff on the fourth issue."

It is contended upon the part of the appellant that the defendant's ninth prayer was erroneous and should not have been granted. A similar prayer, with but a slight modification, was granted upon a similar issue to the fourth issue here and was approved by this Court in *Taylor* v. *Creswell*, 45 Md. 427. It was there said: " It is essential of course to the validity of every will that the party making it should know and understand its contents, otherwise it is not his will. But where a person of sound mind executes a will and the same is his free and voluntary act, the law presumes knowledge on his part of its contents. This presumption, it is true, may be rebutted by the facts and circumstances surrounding its execution and cases may arise in which it is proper to submit to the jury the distinct question, whether the testator understood its contents."

Now, in the case at bar the jury were specifically instructed by the plaintiff's fourth prayer that the defendant was bound to satisfy them that the testatrix understood the contents of the will, and unless they were so satisfied, their verdict must be for the plaintiff. It thus appears that the jury were distinctly told, that the presumption under the defendant's ninth prayer was not conclusive, and notwithstanding this presumption, unless they were satisfied under the facts and circumstances of the case, that the testatrix

understood the contents of the will, their verdict must be for the plaintiff.

We can perceive no error in these instructions and they properly submitted the law, as applicable to this branch of the case.

We have examined with much care the very elaborate brief filed on behalf of the appellant, but we find nothing in the authorities there cited in conflict with the law established by this Court in the cases of *Taylor* v. *Creswell, Exr.*, 45 Md. 424, and *Griffith* v. *Diffendeffer*, 50 Md. 466.

In the case now under consideration there was affirmative proof tending to show that Mrs. Naudain understood the contents of the will. Mr. Whitaker, who received her instructions for the preparation of the will now in controversy, testified : "After I took her wishes I went over the notes in detail with her carefully to have her understand and to know myself that I had taken notes as she wished them, and the conversation was immediately after taking them." He further testified in answer to the following questions :

"Do you think at the interview when she gave you these instructions she understood what she was about?

A. Yes, sir, without any question.

Q. When you came back the night before this will was executed, when you read it to her, what was her condition?

A. The same as it was when she signed it; the same as it was when she gave me the notes to correct the other will.

Q. Do you think she understood the will, and expressed satisfaction with it?

A. I think she understood it thoroughly, and was well aware of what it contained.

Q. How did you judge of that; was it from the discussion?

A. From the manner of her remarks on the subject; her expressions in every way an intelligent person makes manifest in understanding a question.

Q. You say she understood it, and you never had a doubt to the contrary?

A. No, sir; I never had.

Q. The time she executed this will, was she, in your judgment, competent to make a valid deed or contract?

A. I thought so, and still think so; I never had a doubt of it."

There was also evidence that the testatrix had executed a will prior to her marriage in 1886, and also two wills in the year 1892, and except as to the provisions relating to her husband, all of the wills were similar in the main to the will now disputed. Mr. Whitaker who drew the will and who received but little of value under this will, testified: " I say the will was absolutely her own act in every particular, and without the slightest influence or suggestion on my part; I didn't intend to influence her, and I refrained from it. I imparted no knowledge of the transaction to any living soul. I want to make my relations clear, not so much that I desire the result of the suit, as to exonerate myself from any improper relations."

So it will be thus seen that the jury in this case was not left alone to the presumption of law, which followed from the finding of the facts set forth in the defendant's ninth prayer, but they had affirmative proof in favor of knowledge of the contents of the will on the part of the testatrix, and unless they were satisfied that Mrs. Caroline Naudain understood the contents of the will they were instructed by the fourth prayer that their verdict must be for the plaintiff, on the fourth issue.

We all think this case was fairly submitted to the jury, and as there was no error in the rulings of the Court, they will be affirmed.

*Rulings affirmed.*

(Decided April 5th, 1900.)