ZINN, ET AL. *v.* THE IMPERIAL COUNCIL OF THE
ANCIENT ARABIC ORDER OF THE NOBLES
OF THE MYSTIC SHRINE FOR
NORTH AMERICA

[No. 146, September Term, 1968.]

*Decided April 9, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Nathan Patz* for appellants.

*Mahlon W. Hessey*, with whom were *Hessey & Hessey, John H. Hessey, IV*, and *Arthur W. Trump, Jr.*, on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The dispute in this case, in one form or another, revolves around the questions: (1) who may be the proper caveators and caveatees to the testamentary instruments before us (a will and two codicils) and (2) the proper issues to be framed by the orphans' court, for determination by a court of law per-

taining to the mental capacity of the testatrix and her knowledge of the contents of the testamentary instruments.

The testatrix, Margaret May Geiger, executed her last will and testament on February 1, 1957, at a time when she was 75 years of age and after she had undergone three operations for brain tumors during the years 1936, 1949 and 1956 respectively. The will provided for a bequest of $5,000.00 to each of her two granddaughters, Vivian Lovelace Zinn and Dana Farnsworth Zinn, and under Item numbered Seventh $25,000.00 in the form of a lifetime trust to the daughter, Vivian Geiger Zinn, with remainder to the two granddaughters. The will further provided under Item numbered Eleventh for 12 charitable legacies totaling $19,000.00 (including one for $2,000.00 to the appellee) and a provision for $1,000.00 in trust to yield income to be spent for the replacement of flowers on a crypt. The aforegoing specific bequests total $55,000.00. It is Item numbered Twelfth of the will which gives us particular concern and which reads as follows:

> "Twelfth: If the rest, residue and remainder of my estate is insufficient to pay in full the legacies contained in Items Eleventh (a) to Eleventh (1), both inclusive [the charitable bequests], then I direct that the remaining assets of my estate be proportionately divided among said legatees. If the rest, residue and remainder of my estate is more than sufficient to pay said legacies in full, then I direct that any remaining assets be added to the trust estate created by Item Seventh hereof [life estate in daughter, remainder to the granddaughters], to be held upon the trusts, for the purposes, with the powers and subject to the limitations in said Item set forth, to the same end as if it had originally constituted a part hereof."

Approximately seven months later, September 27, 1957, the testatrix executed the first codicil to the will, whereby she added an additional charitable bequest (Eleventh (m)) in the amount of $1,000.00 under Item Eleventh of the will and revoked Item Twelfth substituting in its place the following:

> "Twelfth: If the rest, residue and remainder of my

estate is insufficient to pay in full the legacies contained in Items Eleventh (a) to Eleventh (m), both inclusive, then I direct that the remaining assets of my estate be proportionately divided among said legatees. *If the rest, residue and remainder of my estate is more than sufficient to pay said legacies in full, then I give, devise and bequeath the remaining assets of my estate, after the payment in full of said legacies, unto the Imperial Council of The Ancient Arabic Order of Nobles of The Mystic Shrine of North America, to be used for the maintenance and support of the Shrine's Hospitals for Crippled Children."* (Emphasis supplied.)

It will be immediately noted that the revised Item Twelfth has the effect of cutting off the daughter of the testatrix and the granddaughters, as life tenant and remainderman, respectively, from the residue of the estate.

Some five years and seven months after the execution of the will a second codicil was executed on October 5, 1962. The main change effected by this second codicil was to create a trust sufficient to produce $300.00 per year in favor of a niece, Lillian May Runge, for the term of her natural life. The selection of securities to provide for the Runge trust was to have priority over the bequests provided in Item Eleventh and the residuary bequest in Item Twelfth; otherwise there was no further modification of Items Eleventh and Twelfth, as provided by the will and modified by the first codicil. Upon the death of Lillian May Runge the remaining assets of the trust created in her favor were to be added to the trust created by Item Seventh of the will (whereby the daughter of the testatrix and granddaughters were life tenant and remainderman, respectively). There was no further change regarding the residuary legatee which under the first codicil is the appellee. The second codicil concluded by ratifying and confirming the provisions of the will and first codicil, as modified by the second codicil.

At the time of the testator's death on December 14, 1964, there were assets available for distribution in the appraised value of $745,000.00.

The caveat to the will and the two codicils were filed by Viv-

ian Geiger Zinn (daughter of the testatrix) and Waitman B. Zinn and Vivian Geiger Zinn, parents and next friends of Vivian Lovelace Zinn and Dana Farnsworth Zinn (granddaughters of the testatrix), all of whom appeared as caveators in the orphans' court and are now appellants. The caveatee was The Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America, now appellee.

The gravamen of the challenge to the validity of the will and codicils is that the instruments all manifest that the testamentary disposition of the testatrix was oriented around the apprehension that the assets of her estate might not prove sufficient to discharge the $55,000.00 in specific bequests provided in her will, when, as a matter of fact, she had assets of approximately $700,000.00 at the time she executed the controversial first codicil to the will. The appellants contend that this concern, over the sufficiency of funds for the specific bequests, is "intrinsic evidence" (*Smith v. Shuppner,* 125 Md. 409 at 416, 93 A. 514 (1915)) that she did not have knowledge of what she was doing when she executed the testamentary instruments. *Sellers v. Qualls,* 206 Md. 58, 110 A. 2d 73 (1954).

In the orphans' court the appellee raised the question as to whether all of the appellants were proper caveators. In *Senk v. Mork,* 212 Md. 413, 421, 129 A. 2d 675 (1957), this Court said: "* * * the right of the caveator to contest the will must, if challenged, be established before issues as to the validity of the will are determined." *Senk* cites many cases in support of this principle. Accordingly, we will discuss the proposition as to who may be the proper caveators before reaching the question of the framing of the issues.

### The Caveators

It is *Hornbook* law that in order to maintain a caveat to a testamentary instrument the caveator must show a proper interest in having the will set aside. Maryland has no statute governing who may caveat wills (*Johnston v. Willis,* 147 Md. 237, 127 A. 862 (1925)); however, the rule established by many cases is:

"* * * that any person having an interest in the property of a testator, in the event that the will is annulled,

has the right to caveat his will, whether his interest arises from his relationship to the decedent, as in the case of an heir, or is acquired under the provisions of a prior will. Interest in the property is the very foundation of the right to caveat. * * *. (citing *Hamill v. Hamill*, 162 Md. 159, 166, 159 A. 247, 82 A.L.R. 878; *Johnston v. Willis*, 147 Md. 237, 241, 127 A. 862; *Lee v. Keech*, 151 Md. 34, 36, 133 A. 835, 46 A.L.R. 1488; *Safe Deposit & Trust Co. of Baltimore v. Devilbiss*, 128 Md. 182, 185, 97 A. 367; *Brewer v. Barrett*, 58 Md. 587; *Blake v. Blake*, 159 Md. 539, 150 A. 861.)" *Sykes, Contest of Wills in Maryland*, § 4 at 5.

In the instant case it is undisputed, and the orphans' court so found, that Vivian Geiger Zinn, the daughter of the testatrix, is a proper person to be a caveator to all of the testamentary instruments here involved. Should she be successful in nullifying the will, she would inherit her mother's entire estate to the exclusion of her daughters by virtue of the law of intestate succession (Code (1964 Repl. Vol.) Art. 93, § 139) there being no allegations or evidence of the existence of a prior will. Furthermore, if both codicils to the will are invalid, then by virtue of the language of Item Twelfth, as originally set forth in the will, and Item Seventh to which it refers, the trust in which she would have a life estate, would supplant the appellee as the recipient of the residue of the estate receiving most of the $700,-000.00 to be distributed under the will.

The question as to the qualification of the granddaughters, Vivian Lovelace Zinn and Dana Farnsworth Zinn, as caveators presents a more difficult question. The orphans' court was of the opinion that they should not be caveators to any of the testamentary instruments, that is to the will or the two codicils, for want of a required interest.

We agree with the orphans' court with regard to the lack of qualifications of the granddaughters to maintain a caveat to the will, because should the will be nullified no one stands to gain thereby except their mother on whom the estate would devolve by virtue of the laws of intestacy (Art. 93, § 139). Although maternal affection might well prompt the mother to provide up-

on her death for her daughters, yet, they have no assurance that they will outlive her, or that in the event they should survive they will be the bounty of her testamentary disposition. In matter of fact, the granddaughters have much to gain by the sustaining of the validity of the will. Not only do they each receive a $5,000.00 specific bequest under the will but as remaindermen of the trust created under Item Seventh, they may eventually receive, should they survive the life tenant, the residue of the estate which would comprise the bulk of the $700,-000.00 available for distribution. It is the opinion of this Court that the granddaughters should not be caveators to the will but to the contrary they should be caveatees to that instrument in order to protect and defend their potential interest under the will.

Conversely, as to the codicils, the granddaughters may be caveators, as this should enable them to protect their full interest under the will. We would further add that any other position, such as that advocated by the appellants in argument before this Court, places them in the inconsistent position of attacking the will, the validity of which provides the necessary interest in the estate of the testatrix, which invests them with the right to maintain the caveat to the divesting codicils. See *Sykes, Contest of Wills in Maryland,* § 6 at 14.

### The Framing of Issues

In the instant case the caveat is directed to three testamentary instruments, the will and the first and second codicils. In this case an issue directed to the validity of the will becomes trifurcated as it challenges with equal force the first and second codicils as well. Thus, although the appellants below requested the orphans' court to frame 8 basic issues attacking the testamentary documents, when they are applied to each of the testamentary instruments they multiply to 24 issues.

The orphans' court framed the following issues to be forwarded to a court of law for trial concerning each of the three testamentary documents:

"(1) Were the contents of the said paper writing dated February 1, 1957, purporting to be the Last Will and Testament of the said Margaret May Geiger,

read to or by her, or known to her at or before the time of the alleged execution thereof?"

(2) The same issue as (1) applied to first codicil by substitution of appropriate words.

(3) The same issue as (1) applied to second codicil by substitution of appropriate words.

"(4) Was the execution of the said paper writing dated February 1, 1957, purporting to be the Last Will and Testament of the said Margaret May Geiger, procured by undue influence exercised and practiced upon her?"

(5) The same issue as (4) applied to first codicil by substitution of appropriate words.

(6) The same issue as (4) applied to second codicil by substitution of appropriate words.

"(7) Was the said paper writing dated February 1, 1957, purporting to be the Last Will and Testament of the said Margaret May Geiger, executed by her when she was of sound and disposing mind and capable of executing a valid deed or contract?"

(8) The same issue as (7) applied to first codicil by substitution of appropriate words.

(9) The same issue as (7) applied to second codicil by substitution of appropriate words.

"(10) Was the said paper writing dated February 1, 1957, purporting to be the Last Will and Testament of the said Margaret May Geiger, revoked after the making and execution thereof?"

(11) The same issue as (10) applied to first codicil by substitution of appropriate words.

(12) The same issue as (10) applied to second codicil by substitution of appropriate words.

"(13) Was the said paper writing bearing date of February 1, 1957, the Last Will and Testament of Margaret May Geiger?"

(14) The same issue as (13) applied to first codicil by substitution of appropriate words.

(15) The same issue as (13) applied to second codicil by substitution of appropriate words.

The appellants quarrel with the issues framed by the orphans' court, contending: (I) that it should not have deleted the phrase *"and understood"* after the clause *"read to or by her, or known to her"* (and understood) in issues numbered (1) through (3) which wording had been included in the issues proposed by the appellants; and (II) that the following additional issues should have been framed by the orphans' court pursuant to the petition of the caveator:

"(a) Was the alleged *disposition* sought to be made by the said paper writing dated February 1, 1957, purporting to be the Last Will and Testament of Margaret May Geiger, *known and understood* by her at or before the time of the alleged execution thereof?" (Emphasis supplied.)

(b) The same issue as (a) applied to first codicil by substitution of appropriate words.

(c) The same issue as (a) applied to second codicil by substitution of appropriate words.

"(d) Did the said Margaret May Geiger *know and understand the nature or the extent of the property, assets or holdings* allegedly disposed of or sought to be disposed of by the said paper writing dated February 1, 1957, purporting to be the Last Will and Testament of Margaret May Geiger, at the time of her alleged execution thereof?" (Emphasis supplied.)

(e) The same issue as (d) applied to first codicil by substitution of appropriate words.

(f) The same issue as (d) applied to second codicil by substitution of appropriate words.

"(g) Did said Margaret May Geiger at the time of the alleged execution of the paper writing dated February 1, 1957, purporting to be her Last Will and Testament, *know and understand the effect of the provisions thereof as regards the portion or amount of her Estate to go or pass under the terms of the said paper writing to or for the* use and benefit of Vivian Geiger Zinn or Vivian Lovelace Zinn or Dana Farnsworth Zinn?" (Emphasis supplied.)

(h) The same issue as (g) applied to first codicil by substitution of appropriate words.

(i) The same issue as (g) applied to second codicil by substitution of appropriate words.

The cumulative effect of the appellants' challenge to the issues framed by the orphans' court are directed to two of the requisites for a valid will, namely, the mental competency of the testatrix and her knowledge of the contents of the will.[1]

The appellants challenged the issues framed by the orphans' court, contending that the issues as to whether the testatrix was of a "sound and disposing mind and capable of executing a valid deed or contract," and whether the contents of the testamentary documents were "read to, by her, or known to her" prior to their execution, are not sufficiently broad in scope to encompass the questions of whether she *"understood the contents,"* whether she *"understood the disposition she had made of her assets,"* whether she *"understood the nature and extent of her assets"* and whether she *"understood the portion or amount of her estate which would pass to her daughter and granddaughters"* under the testamentary instruments. The appellants would have a separate issue framed for each one of these listed propositions. With this we cannot agree.

In framing issues to be submitted for determination by a court of law, sitting either with or without a jury, the objective is to draft issues that are simple, concise and couched in plain and easily understood terms. It is also desirable that tedious duplicity be avoided by eliminating overlapping issues. In caveat proceedings the issues should be responsive to the challenges raised in the caveat and "distinctly and clearly present the points upon which the caveators desire the jury to pass, * * *." *Brewer v. Barrett,* 58 Md. 587, 591 (1882). See also *Bruton v. Smith,* 174 Md. 516, 199 A. 517 (1938); *Connelly v. Beall,* 77 Md. 116, 26 A. 408 (1893); and *Sumwalt v. Sumwalt,* 52 Md. 338 (1879). In this last mentioned case this Court summed it up by stating:

"In our opinion, the correct rule to be observed, and the one which will best subserve the purposes of

---

1. *Giardina v. Wannen,* 228 Md. 116, 179 A. 2d 357 (1962); *Griffith v. Diffenderffer,* 50 Md. 466 (1879); *Taylor v. Creswell,* 45 Md. 422 (1876). See cases collected in 22 M.L.E. Wills § 61.

justice, is to *grant no more than one issue presenting the same substantial question,* and secondly, not to multiply the issues unnecessarily, and to grant such only as distinctly present the real questions in dispute." (Emphasis supplied.) *Id.* at 348.

The statutory requirement for a valid will, Code (1964 Repl. Vol.) Art. 93, § 349 would appear to support the single issue concept regarding mental competency wherein it provides:

"§ 349. Testator must be of sound mind and eighteen years old.

No will, testament, or codicil shall be good and effectual for any purpose whatsoever unless the person making the same be at the time of executing or acknowledging it as hereafter directed, of sound and disposing mind, and capable of executing a valid deed or contract. * * *."

Except for the age requirement, the very same language was employed in the statute over 75 years ago when it was construed by this Court in *Connelly v. Beall,* 77 Md. 116, 26 A. 408 (1893). We are of the opinion that the *Connelly* case parries the thrust of the appellants' attack on the orphans' court's refusal to grant the issues requested by the caveator. In *Connelly* the controversy centered around the issue of testamentary capacity. Among the issues submitted by the caveator to the orphans' court were two concerning testamentary capacity:

"2nd. Whether the said paper writing, dated, etc., was executed by the said Catharine A. Whalan, when she was of sound and disposing mind, and capable of making a valid deed or contract?

"6th. Whether the said Catharine A. Whalan, at the time of executing said paper writing, had sufficient mental or testamentary capacity *to know the nature and extent of her property,* and the relative claims of those who should have been the objects of her bounty?" (Emphasis supplied.) *Id.* at 118.

This Court held that it was error for the orphans' court to

194

have framed the sixth issue in *Connelly,* as the second issue covered the statutory definition of testamentary capacity, stating:

"The sixth issue is objected to as being but the mere statement of facts fully covered by, and made admissible under, the second issue; and that, if the second issue be found for the caveator, it would embrace all the facts that could be given in evidence under the sixth issue proposed. In this contention of the appellants we entirely agree. *The statute has fixed the standard of mental capacity to enable a party to make a valid last will and testament. That standard is prescribed in these terms:* 'No will, testament or codicil shall be good and effectual for any purpose whatsoever, unless the person making the same be at the time of executing or acknowledging it, of sound and disposing mind, and capable of executing a valid deed or contract.' This standard prescribed by the statute requires a further definition by the court, as to what condition of mind is required to enable a party to execute a valid deed or contract. But an issue formed in the terms of the statute, presents a mixed question of law and fact; *and that question can always be submitted to the jury under proper instructions by the court.* This test, as prescribed by the statute, is fully presented by the second issue; and every fact that could be offered under the sixth issue can be availed of under the second; and there is therefore no good purpose to be subserved by attempting to bring the mind of the deceased to a different standard or test of testamentary capacity from that prescribed by the statute; and if the test proposed by the sixth issue be substantially the same as that propounded by the second issue, as it clearly appears to be, then the issues are simply duplicated in different terms. This is not allowable by any principle of pleading or practice in such cases; and such an example, to be made a precedent, as that attempted in this case, if allowed, would likely be attended with confusion and conflict of finding by the jury." *Id.* at 118.

See also *Munnikhuysen v. Magraw,* 35 Md. 280, 287 (1872).

In comparing the instant case with *Connelly,* it becomes apparent that the appellants here, as well as in *Connelly,* committed the same error of confusing the wording of the framed issues, with the facts which may be provable under them and considered by the jury under proper instructions.

It is interesting to note the placement and contents of the *annotation* which appears under § 349 of Art. 93 of the Code (statutory requirement for a valid will) which reads as follows:

> *"Determination of sufficient mental capacity.—*
> As stated by Sykes, Contest of Wills in Maryland, Sec. 61, 'Whether a testator had sufficient mental capacity is determined by a consideration of his external acts and appearances. It must appear that at the time of making the will he had a full understanding of the nature of the business in which he was engaged; a recollection of the property of which he intended to dispose and the persons to whom he meant to give it, and the relative claims of the different persons who were or should have been the objects of his bounty.' *Sellers v. Qualls,* 206 Md. 58, 110 A. (2d) 73; *Doyle v. Rody,* 180 Md. 471, 25 A. (2d) 457."

The point to be noted is that under the determination of mental competency the annotation recognizes a wide variety of evidence concerning the actions and understanding of a testator with regard to his business affairs, and his knowledge as to the nature and extent of his holdings, which may appropriately be considered within the scope of this single issue. Furthermore, the manner in which such evidence may affect the answer to the issue of mental competency, may well be the subject of proper instruction by the court. *Connelly v. Beall, supra.* See *Friedel, etc. v. Blechman,* 250 Md. 270, 291, 292, 242 A. 2d 103 (1968), and *Naudain v. Coudon,* 91 Md. 121, 128, 46 A. 314 (1900).

There are reported cases in Maryland wherein more than one issue has been framed pertaining to the mental competency of the testator in a caveat proceedings. However, a reading of the cases reveals that a challenge to the framed issues was not ac-

196

tually involved and that they were decided on evidentiary matters. See *Giardina v. Wannen,* 228 Md. 116, 179 A. 2d 357 (1962); *Daugherty v. Robinson,* 143 Md. 259, 122 A. 124 (1923); *Davis v. Denny,* 94 Md. 390, 50 A. 1037 (1902). Also there are cases which, by way of dicta, set forth various factors involving the actions and knowledge of the testator regarding his affairs which may be considered in determining mental competency, and his knowledge as to the contents of the will, as illustrated by *Baker v. Baltimore Trust Company,* 154 Md. 390, 392, 140 A. 599 (1928) and *Taylor v. Creswell,* 45 Md. 422, 430, 431 (1876), but we do not look upon these cases as authority for the requirement of separate issues on each of these evidentiary matters. The dicta in these cases may readily be reconciled with our holding in this case upon the rationale we have adopted.

Actually, the Court of Appeals in *Baker,* despite its dictum, affirmed the action of the orphans' court in refusing an issue requested by the caveators as to whether the executor at the time of the execution of the will did "know and understand the contents of said paper writing," holding that the issue whether "the contents of the paper were read to or by the testator, or known to him at or before the time of the alleged execution thereof," (*Id.* at 391) was sufficient on the issue of knowledge of the contents of the instrument. Although the appellants relied on *Baker* because of its dictum, we think its holding supports the decision we reach in this case.

In short, we find no case wherein a challenge having been made to the issues framed by the orphans' court where this Court on appeal approved more than one issue under the question of mental competency or more than one issue under the question of knowledge of the contents of the will. *Connelly v. Beall, supra; Munnikhuysen v. Magraw, supra;* and *Sumwalt v. Sumwalt, supra.*

In the instant case, the orphans' court framed basic issues covering not only mental competency, following generally the language of Art. 93, § 349 (issues 7, 8 and 9), but it also framed separate issues directed at the testatrix's knowledge of the contents of the will and codicils (issues 1, 2 and 3).

On the basis of what we have said in this opinion we approve

the issues framed by the orphans' court in its order and we agree that the daughter of the testatrix, Vivian Geiger Zinn, should be a caveator to the will and codicils, and the appellee a caveatee, as stated in the order. However, we direct that on remand the order should be modified to require that the granddaughters, Vivian Lovelace Zinn and Dana Farnsworth Zinn, be represented as caveatees to the will and caveators to the codicils for the purpose of assuring them adequate protection of the interest they have under the will.

*Order modified as set forth in this opinion and as modified affirmed, and case remanded for further proceedings, appellants to pay costs.*