JULIA M. BREWER AND JAMES McColgan, Executors, and others *vs.* LUKE Z. BARRETT, and others.

*Issues on a Caveat to a Will, sent to a Court of Law for Trial—Who entitled to Caveat a Will—Right of Caveators to maintain their caveat.*

On a caveat to a paper writing, purporting to be the last will and testament of J. V., the following issues, among others, were sent by the Orphans' Court of Baltimore City, to the Court of Common Pleas for trial: Third. Whether the execution of said paper writing was procured by undue influence exercised and practiced upon said J. V., and constraining his will therein? Fourth. Whether said J. V. was at any time subsequent to the execution of said pretended will, desirous of altering or destroying the same, and was prevented therefrom by management, fraud, undue influence or importunity? On appeal HELD:

1st. That as the words " and constraining his will therein " contained in the third issue, did, in some measure, attempt to define the degree of influence exerted over the testator, they were objectionable, and should have been omitted.

2nd. That the fourth issue was glaringly defective; that assuming that its object was to submit the question of the revocation of the will to the jury, it should have been: Whether the said paper writing dated the 20th day of February, 1881, and purporting to be the last will and testament of the said J. V. was *revoked* after the making and execution thereof?

A stranger, or one having no interest in the property of a testator, has no right to caveat his will. Interest in the property is the very foundation of the right to caveat. The Orphans' Court should, therefore, be satisfied, that the caveators have the right to maintain the suit before it transmits the issues to a Court of law.

J. V. died in February, 1881, unmarried, and without children, leaving as one of his next of kin, C. B. Certain persons, children of C. B. filed a petition, which was sworn to, caveating a paper purporting to be the last will and testament of J. V., and which had been admitted to probate. The caveators in their petition

charged that C. B. had departed this life, intestate, and that letters of administration on her estate had been granted; and that the petitioners were her next of kin, and heirs at law. The caveatees in their answer did not deny the death of C. B., nor that the caveators were her next of kin, and heirs at law, but said that having no personal knowledge thereof, they could not admit it, but left the matter to the Court to be proven in such manner as to it might seem proper. The caveatees made no demand for a plenary proceeding in the Orphans' Court, but submitted the question of parties to the Court. They offered no evidence whatever tending to disprove either the death of C. B., or that the caveators were her heirs at law. HELD:

That under these circumstances, the Orphans' Court was warranted in determining that C. B. was dead, and that the caveators were her heirs at law, and had sufficient standing in Court to maintain their caveat; and that for the purposes of the suit such determination was final.

APPEAL from the Orphans' Court of Baltimore City.

On the 19th day of October, 1881, Luke Z. Barrett, John J. Barrett and Maria T. Vandaniker filed in the Orphans' Court of Baltimore city, a petition alleging that Joseph Victory died in February, 1881, unmarried, intestate, and without issue, leaving Catherine Barrett, the mother of the petitioners, and Julia M. Brewer and Elizabeth M. Sullivan, his only heirs at law and next of kin; that Catherine Barrett died in June, 1881, a widow, intestate, leaving said petitioners her only living issue, heirs at law and next of kin; and that letters of administration on her estate had been granted by the said Orphans' Court to Charles O'Connor and Samuel J. Smith; also, that a paper writing, dated the 20th February, 1881, purporting to be the last will and testament of said Joseph Victory, had been produced by Julia M. Brewer and James McColgan, claiming to be the executors named therein, and had been admitted to probate by said Orphans' Court, and letters testamentary had been issued

to the said Julia M. Brewer and James McColgan; that said petitioners desired to file their caveat and objections to said paper writing, viz.,

1st. That it was not signed by Joseph Victory, or by some other person in his presence, and by his express direction, and attested and subscribed in his presence, by three or four credible witnesses.

2d. That it was not executed by Joseph Victory when he was of sound and disposing mind, and capable of executing a valid deed or contract.

3d. That its execution was procured by undue influence exercised and practiced upon said Joseph Victory, and constraining his will therein.

4th. That its execution was brought about by misrepresentation, prejudice and fraud, practiced upon said Joseph Victory by Elizabeth M. Sullivan, and Julia M. Brewer and her husband.   The petitioners prayed that the order of probate be revoked and that the executors be required to answer, &c.

The executors under Victory's will answered, admitting the death of Joseph Victory, unmarried, and without issue, and that Catherine Barrett, Julia M. Brewer and Elizabeth M. Sullivan, were his next of kin, but not his heirs at law; but denying the intestacy of Victory, and all allegations against the will probated, and affirming its legality and validity.   The executors further answered, that having no personal knowledge of the death of Catherine Barrett, they neither admitted nor denied the same, but demanded proof of it, if a fact; and also demanded proof of the rights and relationship of the petitioners to Catherine Barrett and her estate.   Subsequently, the petitioners filed another petition, asking that certain issues proposed by them should be sent to a Court of law to be tried, which second petition the executors answered, denying the right of the petitioners to have issues sent, and alleging, in addition to the matters stated in their

former answer, that Catherine Barrett had elected to take under the will of Joseph Victory. General replications were filed by the petitioners to the answers of the executors. No evidence was offered by the petitioners. The Court ordered the issues, which are set out in the opinion of this Court, to be sent to the Court of Common Pleas for trial. The executors thereupon appealed.

The cause was argued before BARTOL, C. J., STONE, MILLER, ALVEY and RITCHIE, J.

*James McColgan,* and *Severn Teackle Wallis,* for the appellants.

*Stewart Brown,* for the appellees.

STONE, J., delivered the opinion of the Court.

One of the questions presented for our consideration upon this appeal, is the form of the issues sent from the Orphans' Court of Baltimore City to the Court of Common Pleas for trial. These issues are as follows:

1st. Whether said paper writing, dated the 20th day of February, 1881, purporting to be the last will and testament of Joseph Victory, was signed by the said Joseph Victory, or by some other person in his presence, and by his express direction, and attested and subscribed in his presence by three or four credible witnesses?

2d. Whether the said paper writing was executed by the said Joseph Victory when he was of sound and disposing mind, and capable of executing a valid deed or contract?

3d. Whether the execution of said paper writing was procured by undue influence, exercised and practised upon the said Joseph Victory, and constraining his will therein?

4th. Whether the said Joseph Victory was at any time subsequent to the execution of said pretended will, desir-

ous of altering or destroying the same, and was prevented therefrom by management, fraud, undue influence or importunity?

All these issues have been excepted to and are all brought before us for review.

No valid objection has been, or can be, shown, to the first or second issues. They are responsive to the charges made in the caveat, are couched in plain and easily understood terms, and distinctly and clearly present the points upon which the caveators desire the jury to pass, and have been sanctioned by long practice in this State.

The first issue raises the question whether the will was executed in the manner prescribed by our statute, so as to pass *real estate;* and the second, whether the testator possessed sufficient testamentary capacity to make any will, whether of real or personal property? Upon both these questions the caveators had the undoubted right to have issues framed and sent to a Court of law for trial.

We are not prepared to say that the third issue is so manifestly defective, that if it alone was involved the defect would cause a reversal of this case, but as the case will be sent back, and as we think that issue has a defect, we will suggest how it may be amended.

This Court has said, in *Sumwalt vs. Sumwalt,* 52 *Md.,* 347, "It is not the province of the Orphans' Court to define the nature, or degree of influence exerted upon a testator which will render his will void."

The Court also says, in the same case: "The degree and kind of influence which, if exerted upon a testator, will vitiate his will, is well understood, and has often been defined by the Courts. We do not mean to enter upon a definition of it here; to do so would be out of place on this appeal."

The words "and constraining his will therein," used in the third issue, do, in some measure, attempt to define the *degree* of influence exerted over the testator, and are there-

fore objectionable. The issue would be better without them. It is the province of the Court before whom these issues will be tried, to define to the jury what constitutes such undue influence as would vitiate the will, and it is not the province of the Orphans' Court to attempt to qualify the term "undue influence," which is a well understood legal term, by the addition of any words explanatory thereof; leaving out these words the issue would read :

3d. Whether the execution of said paper writing was procured by undue influence, exercised and practised upon said Joseph Victory ? To such an issue we see no objection.

The fourth issue is glaringly defective—so much so, that even if found for the caveators, we doubt whether any judgment affecting the will, could have been pronounced upon it. . The object of this fourth issue, we presume, was to submit the question of the revocation of the will to the jury. A will once made is good and valid until it is *revoked.* What constitutes a revocation is well defined and settled. After it is once duly and properly made, nothing can affect or render inoperative a will but a revocation of it, and it is the duty of the Court before whom these issues may be tried, to inform the jury what facts are necessary to constitute a revocation. The proper issue to raise that question is this :

"Whether the said paper writing, dated the 20th day of February, 1881, and purporting to be the last will and testament of the said Joseph Victory, was *revoked* after the making and execution thereof? "

These four issues will cover all the matter raised in the caveat.

The other question raised in the record is, whether the caveators have shown a sufficient interest in the property of Joseph Victory to entitle them to appear in Court and to have the issues made up and the case transmitted to a Court of law for trial ; and this question is not free from difficulty.

It is clear that a stranger, or one having no interest in the property of a testator, has no right to caveat his will. Interest in the property is the very foundation of the right to caveat. The Orphans' Court should therefore be satisfied that the caveators have the right to maintain the suit before they transmit the issues. The fact as to who would be entitled to the property in the event that the will is set aside is generally conceded, and we have found no case, except the present, where the question has been raised. But the question has been raised, and we must look to the record to see if we can find sufficient evidence of the interest of the caveators to warrant the Orphans' Court's action in the transmission of the issues.

The facts disclosed are these: Joseph Victory died in February, 1881, unmarried and without children, and leaving as one of his next of kin Catherine Barrett. This is expressly alleged in the caveat, and *admitted* in the answer. It is also charged in the caveat, and admitted in the answer, that the Orphans' Court of Baltimore City had granted letters of administration on the estate of Catherine Barrett.

The respondents, however, in their answer, neither admit nor deny the death of Catherine Barrett, nor that the caveators are her next of kin or heirs at law, but say they "leave the same, if a fact, to be proven to this Honorable Court, in such manner as it may deem proper."

In the answer to the second petition, the caveatees, by a fair implication at least, admit that Maria T. Vandaniker, one of the caveators, is the daughter of Catherine Barrett, and also allude to the death of Catherine Barrett as an event that may have occurred. It also appears that the petition of the caveators was sworn to.

It must be remembered that the only question for the Orphans' Court to decide, was the question whether or not the caveators had an interest in the property of Victory, in the event that his will was annulled. This

Brewer and McColgan, Ex'rs, *et al. vs.* Barrett, *et al.*

depended upon the fact whether Catherine Barrett was dead, and that the caveators, or any of them, were entitled to the whole or some of her property.

Now the caveators have sworn that Catherine Barrett is dead, intestate, and that they are her next of kin and heirs at law. This the caveatees have not denied, but say that having no personal knowledge thereof, they cannot admit, but leave the matter to the Court to be proved, "as it may deem proper."

By that submission, the caveatees left the matter to be decided by the Orphans' Court, either upon the testimony already before them, at the time of filing the answer, or that might be afterwards brought before them. The caveatees made no demand for a plenary proceeding in the Orphans' Court, but submitted the question of parties to the Court. They, the caveatees, offered no evidence whatever tending to disprove either the death of Catherine Barrett or that the caveators were her heirs at law.

Under these circumstances, we think the Orphans' Court of Baltimore City was clearly warranted in their determination that Catherine Barrett was dead, and that the caveators were her heirs at law, and had sufficient standing in Court to maintain their caveat; and upon that point we affirm their order making said caveators plaintiffs; and also decide that for the purposes of this suit such determination is final.

> *Order affirmed in part, and*
> *reversed in part, and cause*
> *remanded.*

(Decided 13th July, 1882.)