SAFE DEPOSIT AND TRUST COMPANY OF BAL-
TIMORE, Executor, Etc.,

*vs.*

DAISY DEVILBISS AND CHARLES E. ECKER.

*Wills*: *caveators; interest in the property; proof of—.*

Only those who have an interest in the property of a testator,
in case his will should be annulled, are entitled to file a caveat to
his will or to issues relating to its validity; and the rights of
caveators to maintain such suit should be established before such
issues are transmitted.                                    p. 185

In pleading, matters which appertain solely to the jurisdic-
tion of the court, or to the disabilities of the suitor, should never
be blended with questions which enter essentially into the sub-
ject-matter of the controversy.                            p. 185

*Decided March 6th, 1916.*

Appeal from the Orphans' Court of Baltimore County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., THOMAS, PAT-
TISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*D. G. McIntosh* and *Arthur W. Machen, Jr.,* for the appellant.

*Robert Biggs* (with whom was *Chas E. Ecker* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

On the 29th of September, 1914, a paper purporting to be the last will and testament of Henry F. Myers, deceased, and dated the 23rd day of March, 1912, was admitted to probate in the Orphans' Court of Baltimore County, and letters testamentary were granted to the Safe Deposit and Trust Company of Baltimore, the executor named therein. On the same day Charles E. Ecker, on his own behalf "and on behalf of other parties in interest," filed in said Court a notice that he would file a caveat to said will, and on the following day another paper purporting to be the last will and testament of Henry F. Myers, bearing date the 16th of December, 1910, was filed in said Court. By the will of 1910, the testator gave a legacy of two thousand dollars to Charles E. Ecker, Esq., a legacy of five hundred dollars to Daisy Devilbiss, and, after certain other bequests, devised and bequeathed the rest and residue of his estate to the said Charles E. Ecker, who was made executor. By the will dated the 23rd day of March, 1912, the entire estate of the testator is given to the Safe Deposit and Trust Company of Baltimore, in trust to pay the net income therefrom to his nephew, Philip S. Myers, during his natural life, and after his death to pay the principal to the children of the said Philip S. Myers, &c.

On the 17th of August, 1915, Charles E. Ecker and Daisy Devilbiss filed a petition and caveat to the will of 1912, alleging that the said Henry F. Myers left a last will and testament dated the 16th of December, 1910, in which they were mentioned as legatees; that the said paper dated the 23rd day of March, 1912, and alleged to be the last will and

testament of the said Henry F. Myers, was not in fact his last will and testament; that "it was not executed in accordance with the laws of the State of Maryland"; that at the time of its execution the said Henry F. Myers was not of sound and disposing mind, &c.; that the same was procured by undue influence, and that the contents thereof were not known to or understood by the said Henry F. Myers at or before the time of the alleged execution thereof. The petition asked for issues to be framed and sent to the Circuit Court for trial, and for process against the Safe Deposit and Trust Company, executor, &c. The Safe Deposit and Trust Company, executor, answered the petition and caveat, denying that said Henry F. Myers left a duly executed last will and testament dated December 16th, 1910, in which the petitioners were named as legatees, and alleging that if any such will ever existed it was revoked by the testator, Henry F. Myers, prior to his death; that the said Charles E. Ecker and Daisy Devilbiss were not the next of kin or heirs at law of the deceased, and that the said paper writing, dated the 23rd of March, 1912, which was duly admitted to probate by the Orphans' Court, was in fact the last will and testament of the said Henry F. Myers, &c. Thereafter, on the 5th of October, 1915, the Safe Deposit and Trust Company of Baltimore, executor, filed a petition praying the Court to dismiss the caveat and petition of Charles E. Ecker and Daisy Devilbiss, and the Court passed an order requiring the caveators to show cause why the prayer of the petition should not be granted. On the 17th of November, 1915, the caveators answered the petition of the executor, and also filed a petition asking for certain issues relating to the validity of the will of 1912, and on the same day the Orphans' Court passed an order directing the following issues to be sent to the Circuit Court for Baltimore County for trial:

"First: Did the said Henry F. Myers execute the paper writing dated the 23rd day of March, 1912, and alleged to be his last will and testament, in accord-

ance with the provisions of the laws of the State of Maryland relating to the execution of wills?

"Second: Was the said Henry F. Myers at the time of the execution of the paper writing dated the 23rd day of March, 1912, and alleged to be his last will and testament, of sound mind and memory and capable of executing a valid deed or contract?

"Third: Was the said Henry F. Myers induced to execute the paper writing dated the 23rd day of March, 1912, and alleged to be his last will and testament, by undue influence?

"Fourth: Were the contents of the paper writing dated the 23rd day of March, 1912, and alleged to be the last will and testament of the said Henry F. Myers, known to the said Henry F. Myers at or before the time of the alleged execution thereof?"

From the order sending these issues to the Circuit Court for Baltimore County the Safe Deposit and Trust Company of Baltimore, executor, has brought this appeal.

Independent of any adjudication of the questions, it would seem clear upon principle that only those who have an interest in the property of the testator in the event the will is annulled are entitled to caveat his will, or to issues relating to its validity, and that the right of caveators to maintain their suit should be established before such issues are transmitted to a Court of law for trial. Both of these propositions have, however, been distinctly settled in this State. In the case of *Tyler* v. *Murray,* 57 Md. 418, the Court adopts the statement of the Supreme Court in *Sheppard* v. *Graves,* 14 How. 509, that, "it has ever been received as a canon of pleading, that matters which appertain solely to the jurisdiction of a Court, or the disabilities of the suitor, should never be blended with questions which enter essentially into the subject matter of the controversy." This principle was applied in the case of a caveat to a will in *Brewer* v. *Barrell,* 58 Md. 587, and the rule was strictly enforced in the later case of *Reilly* v. *Dougherty,* 60 Md. 276. In *Brewer's Case,*

the Court said: "The other question raised in the record is, whether the caveators have shown a sufficient interest in the property of Joseph Victory to entitle them to appear in Court and to have the issues made up and the case transmitted to a Court of law for trial. * * * It is clear that a stranger, or one having no interest in the property of the testator, has no right to caveat his will. Interest in the property is the very foundation of the right to caveat. The Orphans' Court should therefore be satisfied that the caveators have the right to maintain the suit before they transmit the issues." In *Reilly* v. *Dougherty, supra,* the caveator filed a petition alleging that he was a son of the testator; that the testator was not of sound and disposing mind when the will in question was executed, and that the same was procured by undue influence, and praying that issues based upon the allegations of the petition be framed and sent to a Court of law for trial. The executor and legatees answered the petition, denying the allegations thereof affecting the validity of the will, and also denying that the petitioner was a son of the testator and that he had any standing in Court to assail the will, and praying the Court, before entertaining, at the instance of the petitioner, any inquiry respecting the will, to determine the question of the petitioner's right to maintain the suit, either upon proof taken before that Court or upon issues transmitted to a Court of law. The Orphans' Court disregarded the prayer of the executor and legatees and framed issues respecting the right of the petitioner to maintain the proceeding, and respecting the validity of the will, to be tried in a Court of law at one and the same time. Upon appeal the order of the Orphans' Court was reversed, and in disposing of the case the Court, after quoting from the case of *Brewer* v. *Barrett, supra,* said: "In that case the Court thought, that it sufficiently appeared, from the admissions of the pleading, that the contestants' right did exist and that the Court acted rightly in sending the issues; but the distinct rule is laid down that the Orphans' Court must be satisfied

of the parties' right to ask for the issues, before the issues are sent. The Court, of course, upon the submission of parties could have decided this preliminary question without issues, and having found affirmatively, issues would properly go. But the matter was not passed on by the Court. The decision of a jury upon that question as a preliminary one, was asked for. This was denied; and issues were framed for trial before a jury, blending the question of legitimacy and right to caveat with the questions touching the will's validity. If the decision of this Court in *Brewer* v. *Barrett,* is to be adhered to, it was error in the Orphans' Court, to send any issues touching the validity of the will until the Court was first satisfied of the petitioners' 'right to maintain the suit'; which was denied, and was prayed to be inquired of by a jury. It does not seem reasonable or just to require executors and beneficiaries of a will to defend it upon the application of any intruder who may choose to prefer a right. A long trial might result on the validity of the will when the jury might find, in the end, that the caveator was without right to make the contest. A doctrine, which involves such injustice, and in some cases the exhaustion of the whole estate, upon a hypothetical right only, can not be sound." See also *Richardson* v. *Smith,* 80 Md. 96; *Meyer* v. *Henderson,* 88 Md. 589; *Reichard* v. *Izer,* 95 Md. 451.

In the case at bar the answer of the Safe Deposit and Trust Company, executor, denied that Henry F. Myers left a duly executed last will and testament dated December 16th, 1910, and alleged that if such a will ever existed it was revoked by the said Henry F. Myers prior to his death, and the answer therefore raised issues touching the right of the caveators to file the caveat and to demand issues relating to the validity of the will of 1912. The standing of the caveators in Court depended upon the determination of those questions, and they should have been decided by the Orphans' Court, upon proof taken before it, or after the trial of appropriate issues in a Court of law, before transmitting to a Court of law the issues relating to the will of 1912.

The appellees insisted in this Court that as the appellant did not ask for issues in respect to the will of 1910, it can not now complain of the action of the Orphans' Court in reference to the issues allowed.   But the executor was not bound to ask for issues to be sent to a Court of law.   The Orphans' Court had jurisdiction, in the absence of a demand for issues, to determine the questions raised by the answer on proof before it, and the failure of the executor to ask for issues did not deprive it of the right to have those questions decided by the Orphans' Court before issues were framed, at the instance of the caveators, in reference to the will of 1912.

The record shows that no evidence was offered in support of the will of 1910, and no proof was taken in the Orphans' Court in respect to either of the issues presented by the answer before the issues in reference to the will of 1912 were granted, and we must therefore reverse the order appealed from.

*Order reversed, with costs to the appellant,*
*and case remanded.*