## FRY *v.* YEATMAN, Executor

[No. 169, October Term, 1954.]

*Decided June 10, 1955.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*James Robert Miller*, with whom were *H. Ralph Mil-
ler* and *Robert C. Christie* on the brief, for the appellant.

*Rudolph H. Yeatman, Jr., pro se*, with whom was
*James H. Pugh* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

We have to decide in this case whether the Orphans'
Court of Montgomery County was right in holding that
the appellant did not have an interest in the estate of
her brother sufficient to entitle her to *caveat* his will.

The will of C. Boyd Keys was probated November 25,
1952 in the Orphans' Court of Montgomery County and
letters testamentary were granted to the appellee. He
left his wife a cash legacy and certain real property in
lieu of her statutory share, and made sundry bequests
and devises, most of his estate going to two of his sis-
ters and the son of one of them. The appellant was left
nothing. The testator was survived by his wife, his father
and mother, and three sisters, of whom the appellant is
one, so that if he had died intestate, his widow would
have taken half of his estate and his father and mother
would have taken the other half, in equal shares. Code,
1951, Art. 93, Sec. 132, 133, 136, and Art. 46, Sec. 1
and 2. The father and mother died within two weeks
of each other ten months after the death of their son.
Each died testate. The appellant was left nothing under
the will of her mother and but $100.00 under the will of
her father. Both wills were filed with the Register of
Wills of Montgomery County and proof of the attesting
witnesses was received as to each. Neither will was
probated because the appellant filed a notice of intention
to *caveat* as to each. On November 24, 1953, one day
short of a year after probate of the will of C. Boyd Keys,
the appellant filed a *caveat* to his will, which alleged the
seven customary grounds of invalidity. The appellee

filed an answer to the petition and *caveat* because it did not allege, nor did the record, as a whole, reveal that the *caveator* had "* * * such an interest in the estate of the said decedent as to entitle her to file a *caveat* to said will." After a hearing, at which both sides presented their points of view and memoranda of law, the Orphans' Court dismissed the petition. An appeal was taken to the Circuit Court of Montgomery County, which affirmed the action of the Orphans' Court, and the appeal here is from its judgment for the appellee for costs. An appeal from the Orphans' Court to the Circuit Court and then to this Court is provided for by Code, 1951, Art. 5, Sec. 69.

It is apparent that the appellant can take part of the estate of her brother only if that part first goes to one of her parents, as a result of the setting aside of her brother's will. Even if the brother died intestate, so that the parents do take from him, the appellant is not helped unless she can set aside the will of one or both of them. If she can do this, she would, as one of the three daughters who survived them, take her share of the estate of a parent who died intestate. If the wills of both parents stand, she has no possible interest in her brother's estate. The appellant claims that her right to *caveat* the will of her parents and the possibility of success in the effort, constitute an interest in the estate of her brother sufficient to give her the standing to *caveat* his will. The appellee says that all she has is the possibility of being successful in two or three law suits, which is insufficient interest in the eyes of the law.

The courts of the country have divided on whether the heir or personal representative of one who was entitled to *caveat* a will, succeeds to that right on the death of the ancestor. The minority view, often referred to as the Illinois rule, is that the right to *caveat* is established at the time of the probate of a will and does not descend or accrue to anyone who is not then entitled. *Selden v. Illinois Trust & Savings Bank*, 239 Ill. 67, 87 N. E. 860. The majority view is that any person who,

within the period of limitations, acquires an interest in the will which would accrue to his pecuniary advantage, has the right to contest the validity of the will within that time. *Ingersoll v. Gourley,* 72 Wash. 462, 130 P. 743. An annotation in 129 A. L. R. 324 discusses the two lines of cases. Some of the states have held that the general abatement statutes apply to *caveat* proceedings. This Court held to the contrary in *Diffenderffer v. Griffiith,* 57 Md. 81 (although the survivor of the two *caveators* was allowed to continue the action) and pointed out that no special provision was made in the Code for making new parties in the Orphans' Court on the death of a litigant. By Chapter 51 of the Acts of 1890, now Code, 1951, Art. 93, Sec. 234, the Legislature remedied this defect by providing that whenever a party dies after issues have been granted, the court may admit as a party to such issues: "* * * the proper representative, whether as to realty or personalty * * * in the place of such party, and the Orphans' Courts shall have the same right at any time after filing a petition before the issues are sent." *Brewer v. Barrett,* 58 Md. 587, decided, where an heir and next of kin of a testator died intestate six months after his death, leaving children as her only heirs and next of kin, that the children had the right to *caveat* the will, their mother having taken no steps to contest it during her lifetime. Maryland appears to be on the side of the majorty of the states, so that if either the father or mother of C. Boyd Keys had died intestate, the appellant would have had an interest substantial enough to permit her to *caveat* the will of her brother.

The question before us is not so simple. This Court has held repeatedly that a stranger or one having no interest in the property of a testator has no right to *caveat* his will. An interest in the property is the very foundation of the right to *caveat. Brewer v. Barrett, supra; Safe Deposit & Trust Co. v. Devilbiss,* 128 Md. 182; *Johnston v. Willis,* 147 Md. 237, 240. A number of cases have passed on what was a sufficient interest to justify *caveat.* In *Helfrich v. Yockel,* 143 Md.

371, it was held that an executor under a prior will does not have sufficient interest to *caveat* a will by virtue of the commissions which he would have if he served. *Johnston v. Willis, supra,* decided that a trustee does have standing to *caveat* because the interest of the trustee is of "* * * a decidedly more substantial nature than is the interest of an executor * * *." In *Blake v. Blake,* 159 Md. 539, the grandson of the testator sought to *caveat* a codicil which gave his aunts, who had life estates in a trust fund established by the will, the power to appoint their share if they died without issue, whereas under the will, their share in such case passed to the other children of the testator or to " "* * * descendants then living of any deceased child * * *'." The theory of grandson was that if he outlived his father, he might receive less at the death of an aunt, by reason of her exercise of the power given her by the codicil. It was held that his interest, dependent upon two contingencies, was too remote to give him a right to *caveat.*

In *Loyola College v. Stuart,* 179 Md. 96, religious corporations, takers under a prior will were held to have an interest in the estate of the testatrix sufficient to authorize a *caveat* by them, even though they had not obtained legislative sanction of the gifts to them, as required by the Declaration of Rights of the Maryland Constitution. In essence, the Court would seem to have decided that the religious corporations had rights comparable to those of one having a vested but defeasible estate.

In *Lee v. Keech,* 151 Md. 34, it was held that a judgment creditor of an heir has no standing to file and prosecute a *caveat* to the will of the ancestor of that heir by which real property is devised to others, although there is substantial authority to the contrary in other states.

This Court has tested the sufficiency of interest to *caveat* in each case without attempting to formulate a general rule to be universally applied. It has, however, laid down the firm requirement that the Orphans' Court must satisfy itself that the *caveator* has a right to main-

tain the proceedings before it transmits the issues. The interest sufficient to *caveat* must be found as a fact as a prerequisite to the determination of the validity of the will, either by the Orphans' Court or by the answer of a jury to issues. *Brewer v. Barrett, supra.* The Orphans' Court may determine this preliminary question for itself or submit issues of fact as to the interest of the *caveator* to a jury in a court of law. This preparatory determination is an application of the rule that matters which pertain solely to the jurisdiction of the court, or the disabilities of the suitor, should never be blended with questions which enter essentially into the subject matter of controversy. *Reilly v. Dougherty,* 60 Md. 276, 278. There, the *caveator* alleged that he was the son of the testator and sought to set the will aside. The first line of defense was that he was not the legitimate son of the testator. The Court said it was error in the Orphans' Court to send any issues touching the validity of the will until the court was first satisfied of the petitioner's "* * * 'right to maintain the suit;' which was denied and was prayed to be inquired of by a jury." It added: "It does not seem reasonable or just to require executors and beneficiaries of a will to defend it upon the application of any intruder who may choose to prefer a right. A long trial might result on the validity of the will when the jury might find, in the end, that the *caveator* was without right to make the contest. A doctrine which involves such injustice, and in some cases the exhaustion of the whole estate, upon a hypothetical right only, cannot be sound." This principle was followed in *Meyer v. Henderson,* 88 Md. 585, where issues were sent to a court of law without first determining the right of the *caveator* to proceed, and the jury set aside the will. This Court reversed, holding that the preliminary question had first to be decided. In *Safe Deposit & Trust Co. v. Devilbiss, supra,* the would-be *caveator* claimed under a prior will. It was held that the standing of the *caveator* depended upon whether there had been an earlier will and, if so, whether it had been revoked, and that these

questions should have been decided by the Orphan's Court upon proof taken before it or after the trial of appropriate issues in a court of law, before the issues relating to the later will were tried. See also *Schmidt v. Johnston,* 154 Md. 125; *Contest of Wills in Maryland,* Sykes, Sec. 6.

In the case before us, when the *caveat* to the will of the brother was filed, and when that case was heard and decided in the Orphans' Court and in the Circuit Court, the appellant had given only notice of intention to *caveat* the wills of the parents. The petition of *caveat* was not filed until almost a year after the dismissal of the case in the Orphans' Court and six months after its affirmance by the Circuit Court. Witnesses to the wills of both the father and the mother had appeared and repeated under oath the affirmations of the attestation clauses. The wills were *prima facie* valid and the burden of proof of showing their invalidity was upon the appellant. *McIntyre v. Saltysiak,* 205 Md. 415, 420-421. This was her burden not only at the time of the filing of the *caveat* to the brother's will, but also when it was heard and decided by the Orphans' Court and by the Circuit Court. We do not have to decide whether the situation would be different if the appellant had filed the *caveats* to the parents' wills before, or at the same time as, that to the brother's will, and had asked the Orphans' Court to determine the validity of those wills or to send issues as to them to a court of law, to be decided before a *caveat* to the brother's will was actually filed. Nor, need we decide whether the result would be otherwise if she had requested the Orphans' Court to delay action on her right to bring the *caveat* to her brother's will until these preliminary questions were decided. The record shows no request for postponement or delay and we are not told that any was sought, and, as we have noted, no *caveat* was filed in the Orphans' Court upon which the court could have decided the validity of the parents' wills nor have framed issues for transmission to a court of law until long after the matter had been ruled on. This being so, it is our view that the Orphans' Court did not

err when it dismissed the *caveat* to the brother's will on the ground that the appellant had no interest in his estate which entitled her to contest his will.

Some analogy may be drawn betwen the situation which was before the Orphans' Court, when it dismissed the appellant's petition, and that in the case of *Brewster v. Brewster,* 204 Md. 501, where the wife attacked the validity of an Arkansas divorce obtained by the husband and the chancellor indicated that he agreed with the wife that it was invalid but had made no formal ruling as to its validity or invalidity. We held that the Arkansas decree must be presumed to be valid until there was an actual finding of its invalidity by a court of competent jurisdiction.

In *Tinker v. Ringo's Ex'r* (Ky), 11 S. W. 605, the testator left his whole estate to his six adopted children. As his heirs and next of kin, the children would have taken the whole estate if he had died intestate. A relative, who claimed as an heir, sought to inherit the estate, alleging that the will was invalid and that the six judgments of adoption were all void because obtained by fraud. He asserted that he had instituted actions to set the judgments aside, which were then pending and undetermined. The Court held that before he could "* * * contest or appeal from the order establishing the will, those judgments would have to be set aside * * *." The Court went on to hold that an agreement between the parties, that the determination of the validity of the will should await the outcome of the six actions to vacate the judgments of adoption, was not binding and to be given no effect. See also *State v. McQuillin* (Mo.), 152 S. W. 341.

Cases from other jurisdictions, which lend support to our view that the interest of appellant is to remote to justify her attempt to set aside her brothr's will, include *In re Ballmann's Will,* 100 N. Y. S. 2d 447, where the Court rejected an effort to *caveat,* the right to which was buttressed by a claim that, if successful, the attacker probably would receive a greater inheritance from her

sister, and a similar holding in *In re Fallon's Will* (Iowa), 77 N. W. 575, 576. See also *Halde v. Schultz* (S. D.), 97 N. W. 369

In *In re Rogers' Estate* (N. J.), 83 A. 2d 268, 276, an earlier will gave the residue of the estate to the trustee for charitable uses. As part of these, the trustee was directed to establish a home for poor crippled, ill and blind children or, if it would comply more fully with the testator's aims, in its judgment, the trustee was instructed to communicate with the Reconstruction Home at Ithaca, New York, and if the home was not sufficiently endowed, or maintained directly or indirectly by the State of New York: " '* * * to arrange by written agreement or contract for the enlargement of said home, and the change of its name * * *' " to that of the testator. The Court said: "It can be readily seen from the quoted portions of the will that the Reconstruction Home, Inc. is a mere possible appointee and, as such, has no interest, vested or contingent, in the estate of the testator." As a possible appointee under the earlier will, the home was held to have a "mere *spes*" which was not enough to permit the move to set aside the probate of a later will. The case was modified on appeal on other points but no appeal was taken as to the decision of the Reconstruction Home's lack of interest as a *caveator*.

The appellant in this case is merely a possibly successful suitor, who, at the time of the decision of the case below, had not even filed suit. The Orphans' Court did not err in dismissing her petition and the judgment of the Circuit Court for Montgomery County must be affirmed.

*Judgment affirmed, with costs.*