## KUENNE *v.* KUENNE

[No. 118, September Term, 1958.]

*Decided February 17, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and OPPENHEIMER, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Arthur J. Hilland* for the appellant.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett & Powers* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

Lillian Kuenne (Lillian or the caveator) and Raymond Emil Kuenne (Raymond or the caveatee) are brother and sister. When their mother, Bertha Kuenne (the mother or testatrix), died in 1956, she devised and bequeathed the bulk of her estate to Raymond. Lillian was not satisfied with the pittance she received and caveated the will. At the conclusion of the trial, the lower court directed the jury to answer the issues relating to undue influence and fraud in the negative, which had the effect of sustaining the will on those issues. The caveator appealed contending the court erred when it refused to submit issues of undue influence and fraud to the jury, and in certain rulings on the evidence and its refusal to permit an incompetent brother to intervene in the caveat proceedings.

At her death the testatrix was seventy-six years of age, and had been a widow for thirty-two years. Until a few days before the will was executed on December 6, 1948, the testatrix had lived on her farm near Landover in Prince George's County with her three sons, Helmuth Herbert Kuenne, William Herman Kuenne and Raymond. There were also two daughters, Margaret Loffler, who was married and lived away from home, and Lillian, who was also away from home earning her own living. William, an unadjudicated incompetent, lived at home, but was incapable of fending for himself or of helping with the farm work. On November 26, 1948, Helmuth was kicked in the head by a horse and died. Helmuth and Raymond had tilled the farm for years. Raymond continued to carry on the farm alone for his mother after the death of Helmuth, and the members of the family who remained at home—the mother, Raymond and William—lived together until her death.

It was shown that the mother renounced her right to administer the estate of Helmuth, and that Raymond applied for and was granted letters of administration. When admin-

istration had been completed, the net estate was distributed to the mother who was the sole heir. But the sum so distributed was deposited in a joint account in her name and Raymond's where it remained until her death.

There was also evidence of the bad physical and mental condition of the testatrix and of her peculiar conduct as well as the poor conditions under which she and her sons lived at or about the time of Helmuth's death. The caveator testified that on the day of the funeral—seven days before the will was executed—the testatrix appeared to be in a daze, a state of shock or mental fog, and was not aware of what was going on. But there was no evidence tending to show that the testatrix had been subjected to any undue influence in connection with the execution of the will or that any fraud had been practiced on her other than that the caveatee—who lived with his mother, took care of her and his incompetent brother and ran the farm—summoned the scrivener to the family home and subsequently took his mother to the attorney's office where she signed the will and then took her back home.

The will, after bequeathing $500 to each of the daughters and $1000 to William, devised and bequeathed the rest and residue of the estate, including the farm, to Raymond and appointed him as the executor. In making the bequest to William, the testatrix directed its payment to Raymond as guardian with authority to expend the sum for the use and benefit of William without the necessity of accounting therefor in any court.

In addition to claiming that the court erred when it directed the jury to so answer the issues relating to fraud and undue influence as to sustain the will, the caveator contends that the court also erred when it denied a motion to amend the proceedings so as to allow the guardian *ad litem* for and on behalf of William to intervene in the trial of the issues; when it admitted the contested will in evidence without proof that the subscribing witnesses had formed an opinion as to the testamentary capacity of the testatrix before witnessing the will; and when it excluded from the evidence a part of the

deposition of a nonattending witness which the caveator wanted to use in her cross-examination of the caveatee.

## Right to Intervene

On the motion of the caveator, the lower court (Fletcher, J.) appointed a guardian *ad litem* to represent and defend the rights and interests of William in the caveat proceeding. When the guardian *ad litem* moved to so amend the proceeding as to allow William to intervene, the court (Marbury, J.) denied the motion. The motion to intervene was properly overruled. While the caveator practically conceded at the argument that this point was without force, she did not abandon it, and relies on the provisions of Maryland Rule 320 b 1 [providing no action shall abate by reason of the misnomer, nonjoinder or misjoinder of a *party*] and Rule 320 b 3 [relating to a *party* who is under disability, not to a *non-party* who may be under disability]. Neither subsection is relevant here. Even if Rule 320 is applicable to a caveat proceeding under some circumstances, which we do not now decide, it is clear the rule has no bearing on the right of an interested party to *intervene* in a caveat proceeding. Only the orphans' court, in the exercise of its discretion, may properly permit a would-be-intervenor to be made a party to the issues. See *Little Sisters of the Poor v. Cushing,* 62 Md. 416 (1884). Cf. *Diffenderffer v. Griffith,* 57 Md. 81 (1881), in which it was held that the record had to be remanded to the orphans' court because a court of law was without power to substitute the representative of a party who dies after the transfer of the issues to the law court for trial.[1] Moreover, it is generally the orphans' court which designates—as it did in this case—who shall be plaintiff and who shall be defendant in the trial of issues in the law court. Cf. *Stocksdale v. Culli-*

---

1. This hardship was removed by the enactment of Chapter 51 of the Acts of 1890, subsequently codified as Art. 93 §§ 218, 219, 226, 226 and 234, respectively, in the Codes of 1904, 1912, 1924, 1939 and 1951. See *Fry v. Yeatman,* 207 Md. 379, 114 A. 2d 621 (1955). The section was repealed by Chapter 399 § 1 of the Acts of 1957, but it is, in substance, a part of Maryland Rule 220 a 3.

*son,* 35 Md. 322 (1872) and *Edelen v. Edelen,* 6 Md. 288 (1854), which held that caveators are entitled to be *plaintiffs.*

### ADMISSIBILITY OF WILL

The only available subscribing witness testified that she was a witness to the will, that she recognized the signature of the other attesting witness and that both were present when the testatrix affixed her signature to the will. The signature of the absent subscribing witness, who was ill, was also identified by her employer. On direct examination the available witness was not asked whether she had formed an opinion as to the testamentary capacity of the testatrix at the time she executed the will.

The caveator claims she was not allowed to cross-examine the witness to ascertain whether she had formed an opinion as to the testamentary capacity of the testatrix before she witnessed the will. But the record does not bear her out. In the preliminary colloquy at the Bench between counsel and trial judge it is apparent that the question was left open as to when, if at all, the caveator could cross-examine the witness. The caveator made no attempt to examine on the point when she took the witness on cross-examination. Instead, she reserved the question and the witness was excused, subject to recall, but was never recalled. When the caveatee had concluded his proof of the execution of the will, the court, over the objection of the caveator, admitted the will in evidence. The caveator insisted below and contends here that there was no proof that the will was witnessed by two or more *credible* witnesses.

There does not seem to be any doubt that an attesting witness should inform himself as to the capacity of a testator to make a will before he undertakes to witness it. This is the reason why a subscribing witness may express an opinion as to testamentary capacity without first demonstrating he is qualified to testify. *Townshend v. Townshend,* 7 Gill 10, 27 (1848). However, a subscribing witness need not be asked whether at the time the will was executed he investigated the mental capacity of the testator. That he did will be presumed until the contrary appears. *Jones v. Collins,* 94

Md. 403, 412, 51 A. 398 (1902.) See also 1 Page *Wills*, §
351 (Life ed., 1941), where it is said that a subscribing wit-
ness may "assume the sanity of a testator if [he] knew no
facts which would tend to show that [the testator] was in-
sane." And, although it was within the power of the caveator
to ascertain how far the subscribing witness had satisfied her-
self of the competency of the testatrix [*Jones v. Collins,
supra*], the caveator neglected to do so. It has been held
that a witness, who has not been asked on direct examination
nor had given his opinion of the mental capacity of the testa-
trix, but testified merely to the factum of the will, could not
be *cross-examined* as to mental capacity at that time. *Daugh-
erty v. Robinson*, 143 Md. 259, 265, 122 A. 124 (1923). But,
there was no reason why the caveator should not have ex-
amined the subscribing witness at a later stage of the proceed-
ings had she desired. *Waters v. Waters*, 35 Md. 531 (1872).
The *onus probandi* was on the caveator to show the witness
was not credible and she failed to do so.

Since there was no testimony to the contrary, the subscrib-
ing witnesses were presumed to be credible. See *Jones v.
Collins, supra*. Moreover, the *prima facie* effect of the attesta-
tion clause, plus the testimony of one of the subscribing wit-
nesses to the effect that the will was regularly executed, were
sufficient, on the trial of the issues in this case, to establish
proper execution of the will, in the absence of evidence to the
contrary. See *West v. Fidelity-Baltimore Natl. Bank*, 219
Md. 258, 147 A. 2d 859 (1959), and the cases therein cited.

## Use of Part of Deposition

At the trial, the caveator sought to cross-examine the
caveatee—with respect to his knowledge of and participation
in an alleged attempt by the caveatee's sister to intimidate
her mother-in-law—by offering only a part of the deposition
of the mother-in-law for that purpose. The trial court sus-
tained an objection to the cross-examination of the caveatee
with regard to the alleged intimidation, and subsequently also
ruled that the caveator should introduce all of the deposition
or none of it. This the caveator declined to do. The reason
for the ruling was clearly wrong but, so far as we can de-

termine from the record, the result was right. The caveator proposed to use only that part of the deposition which purported to be a threat made, not by the caveatee, but by *his* sister—Margaret Loffler—to *her* mother-in-law over the telephone on the morning of the day the deposition was taken. Maryland Rule 413 a specifically provides that any *part* or all of a deposition, *so far as admissible under the rules of evidence,* may be used for any of the purposes set forth in the rule—one of which is the right of an adverse party to use the deposition for *any* purpose. Rule 413 a 2. On the other hand, Rule 413 a 4 states that, if only a part is offered, an adverse party may require the introduction of *so much* of the deposition as is *relevant to the part* introduced. The record quotes *only* the answer to one question. Since those parts of the deposition which were relevant to the part proposed to be used were not included, the incompleteness of the record precludes us from passing upon the admissibility of the part proffered. See Rule 413 a, a 2, *supra.*

DIRECTED VERDICTS AS TO UNDUE INFLUENCE AND FRAUD

Three issues were sent by the orphans' court to the law court for trial—undue influence, testamentary capacity and fraud. The trial court directed the jury to so answer the issues of undue influence and fraud as to sustain the will. The issue as to testamentary capacity was not raised in this Court, and the record does not disclose how it was disposed of. None of the cases cited by the caveator in her brief or in the oral argument is authority for shifting the burden of proof from the caveator to the caveatee. We think it is clear the trial court did not err when it refused to submit the charges of undue influence and fraud to the jury for the simple reason, as the trial court pointed out, there was no evidence to support either charge. Neither a conjecture nor a suspicious circumstance, or even an influence which does not motivate the execution of a will, is sufficient to submit the question of *undue* influence to a jury. *Donnelly v. Donnelly,* 156 Md. 81, 83, 143 A. 648 (1928). Moreover, the burden of proof is always on the caveator. *Woodruff v. Linthicum,* 158 Md. 603, 608, 149 A. 454 (1930). And, as

with undue influence, the burden of proving fraud is also upon the caveator. Since she offered no evidence of fraud the caveatee was entitled to a verdict. *Griffith v. Diffendeffer,* 50 Md. 466, 482 (1879). Whether or not there was any evidence of undue influence or of fraud were questions for the court to decide. See *Smith v. Diggs,* 128 Md. 394, 396, 97 A. 712 (1916).

Since the record does not disclose reversible error as to any of the questions raised, the rulings of the trial court must be affirmed.

> *Rulings affirmed, the appellant
> to pay the costs.*

PRESCOTT, J., concurs in the result.