SENK, EXECUTRIX *v.* MORK

[No. 78, October Term, 1956.]

414

*Decided March 4, 1957.*

The cause was argued before Brune, C. J., and Collins, Henderson, Hammond and Prescott, JJ.

*Arthur J. Hilland,* with whom were *DeWitt S. Hyde* and *A. Luini del Russo,* on the brief, for appellant.

*William L. Kahler,* for appellee.

Brune, C. J., delivered the opinion of the Court.

The principal question in this case is whether or not a surviving spouse may maintain a contest attacking the validity of the will of the deceased spouse, when the survivor could have taken exactly the same interest by timely renunciation of the will as by striking it down through a successful caveat proceeding.[1] The time for renunciation has expired.

The testatrix, Margaret D. Long Mork, died on April 20, 1952. She was survived by her husband, the appellee, two sisters, and a nephew and two nieces who are children of a deceased brother of the testatrix. One of the sisters, Mrs. Senk, is the executrix of the will of the testatrix.

The will is dated April 14, 1952. After revoking any prior testamentary instruments and directing the payment of debts and funeral expenses, it devised and bequeathed the testatrix' estate to her husband and sisters in equal shares, and appointed Mrs. Senk as executrix. No gift was made to the children of the deceased brother. They would have shared in the estate in case of intestacy.

The will was admitted to probate by the Orphans' Court for Montgomery County on April 29, 1952, letters testamentary were granted to Mrs. Senk on the same day, and an order for publication of notice to creditors was also filed on that date. Such notice expired about October 30, 1952, we understand. The husband filed a caveat on June 11th and an amended caveat on July 16, 1952. The executrix answered the amended

petition on the merits on July 29th, and on January 14, 1953, the Orphans' Court transmitted issues in customary form relating to the due execution and genuineness of the will, the testatrix' knowledge of its contents, fraud, undue influence and mental capacity.

Up to this point, no question appears to have been raised with regard to the husband's right to contest his wife's will. In February, 1956, this question was raised by the executrix on a motion to dismiss the caveat filed in the Circuit Court for Montgomery County and by a somewhat similar petition filed in the Orphans' Court. The Circuit Court entered an order dated February 4, 1956, reciting that it was "of the opinion that only the Orphans' Court has jurisdiction to decide the question presented by the motion, and [that] the parties, by and through their respective attorneys * * * [have] consented to the removal of the case back to the Orphans' Court for a determination of the question," and remanding the case accordingly. In the Orphans' Court the executrix' petition to dismiss the husband's petition and caveat was denied and an order was entered on May 31, 1956, directing that the issues be transmitted to the Circuit Court. The appeal is from that order. No question is raised as to its being an appealable order. See *Sykes, Contest of Wills in Maryland,* § 154, page 199; *Little Sisters of the Poor v. Cushing,* 62 Md. 416.

The executrix relies heavily upon Section 325 of Article 93 of the Code (1951), which provides that a surviving husband or widow shall be barred of any rights of dower in land or share in land or any personal property by any devise or bequest contained in the will of the deceased spouse, unless within thirty days after the expiration of notice to creditors the surviving spouse files a written renunciation in substantially the form specified in that Section. This form of renunciation combines both a renunciation of any bequest or devise "made * * * by the last will and testament of my wife or husband, exhibited and proved according to law;" and an election to take in lieu thereof either dower and legal share of the personal estate of the decedent or to take his or her "legal share of both the real and personal estate" of the deceased spouse. The concluding paragraph of Section 325 spells out

exactly what interest the surviving spouse is to take. If dower is not included in the election, the legal share which the surviving spouse takes is: (a) one-third of the lands and one-third of the "surplus personal estate" if the deceased spouse is survived by descendants; or (b) one-half of the lands and one-half of the "surplus personal estate" if the deceased spouse is not survived by descendants but is survived by a father or mother; or (c) two thousand dollars (or its equivalent in property) and one-half of the residue of the lands and one-half of the "surplus personal estate" remaining if the deceased spouse is not survived by descendants or a father or mother.

Section 325 of Article 93 is derived from Section 2 of subchapter 13 of Chapter 101 of the Acts of 1798, which dealt with the dower and legal share of widows. That statute in turn had its statutory antecedents in Maryland reaching back to the early Eighteenth Century. The widow's rights had an origin in the custom of London which these early statutes recognized. *Griffith v. Griffith's Executors,* 4 Harris & McH. 101; *Coomes v. Clements,* 4 Harris & J. 480; *Marriott v. Marriott,* 175 Md. 567, 3 A. 2d 493.

Historically, these legal rights of the widow were not necessarily the same as her rights in case of intestacy and they rested on a different basis. *Hokamp v. Hagaman,* 36 Md. 511; *Marriott v. Marriott, supra.* There was only one brief period, from 1922 to 1924, when what is now Section 325 of Article 93 defined the legal share of the widow or of the surviving husband by reference to the intestate laws. Acts of 1922, Chapter 348; Acts of 1924, Chapter 223. In *Marriott v. Marriott, supra,* it was expressly held that the intestate law as to distribution of the personal estate of a decedent did not apply under what was then Section 311 (now Section 325) of Article 93 to the share which the widow would take.

It is true, however, that by reason of an amendment to Section 325 made after the decision in the *Marriott Case* the widow's share under Section 325 is the same as what it would be under the intestate law, except in the situation described in Section 130 of Article 93, where the deceased spouse leaves surviving neither a child, grandchild, father, mother, brother,

sister, nor child of a brother or sister. In the situation covered by Section 130, the surviving spouse takes 100% of the decedent's net estate and is not limited to the share stated in Section 325.

Under the present law, the interest to which the surviving spouse is entitled upon renunciation and election under Section 325 may not be the same as under the intestate laws, and the time for making an election under Section 325 differs from the time allowed for filing a caveat. The time for filing an election is approximately seven months after probate, subject, under Section 326, to one or more extensions by the Orphans' Court, for good cause shown, for not more than six months on any one extension. The time for filing a caveat is within one year from the date of probate. Thus, in the present case, a renunciation under Section 325 could have been filed up to about November 30, 1952, without any extension of time by the Orphans' Court, and a caveat could have been filed up to April 29, 1953. The time had not expired for either course of action when the amended petition and caveat was filed in July, 1952, nor when (as a result of some prodding by the executrix) the husband filed proposed issues in November, 1952, but it had expired before the order for the transmission of issues was filed.

The executrix relies heavily upon the bar of Section 325. In terms, however, it applies only to the shares of real and personal estate therein specified and does not in terms refer to the shares of real and personal estate which the surviving spouse would take in case of intestacy. The husband contends that the bar of Section 325 is predicated upon a valid will. In this contention, he finds support in *Haas v. Haas* (Ind. App.), 96 N. E. 2d 116, 98 N. E. 2d 232 (on motion for reargument); *Flynn v. McDermott*, 183 N. Y. 62, 75 N. E. 931; *Freeman v. Freeman*, 61 W. Va. 682, 57 S. E. 292, 11 Ann. Cas. 1013; and *Dexter v. Codman*, 148 Mass. 421, 19 N. E. 517.

In this State the precise point has not been decided, so far as we are informed by the briefs or by our own study. It is true that some rather sweeping language has been used in giving effect to a failure to renounce within the time provided

by the statute. On the other hand, such cases as *Collins v. Carman,* 5 Md. 503, *Kernan v. Carter,* 132 Md. 577, 104 A. 530, *Bish v. Bish,* 181 Md. 621, 31 A. 2d 348, *Yungerman v. Yungerman,* 165 Md. 609, 170 A. 170 (quoted in the *Bish Case*) and *Miller on Construction of Wills,* page 824 (quoted in both the *Bish* and *Yungerman Cases*), while stating the effect of the present Section 325 of Article 93 in quite posi-tive terms, also speak of the failure to renounce valid gifts within the prescribed time as bringing the statutory bar into operation. Indeed, in *Collins v. Carman, supra,* after referring to the Act of 1798, Chapter 101, sub-chapter 13 (particularly to Section 2 stating the bar, and Section 5 stating the excep-tion thereto, from which Sections 325 and 329 of the present Article 93 are, respectively, derived), the Court twice italicized the word "valid" in stating its holding. At page 530, Judge Eccleston said: *"Every valid devise or bequest* is, therefore, made an effectual bar, unless it be removed by a renunciation." Similarly, on page 531, he went on to say: "Under this [Act] we conceive that when a man dies leaving a will, making *valid* gifts of real and personal estate to his wife, she has not, as she had at common law, a vested right to dower in his land, or to a legal share of his personalty, but her vested rights are under the will by virtue of the statute law."

See also *Bish v. Bish,* 181 Md. 621, 31 A. 2d 348, and *Bar-rett v. Clark,* 189 Md. 116, 54 A. 2d 128, decided in 1947. In the latter case, the Orphans' Court was held to be without power to extend the time for renouncing, where the widow of the decedent, whose will had been probated, was unable to conclude an equity proceeding involving the question of whether or not an ante-nuptial agreement was a bar to her marital rights in the estate, before the expiration of the time for renouncing and electing. This case apparently led to the amendment of Section 326 of Article 93 by Chapter 369 of the Acts of 1949, which permits an extension of time to be granted to any surviving spouse, not only to or for the bene-fit of a spouse under a disability (as had been held in the *Barrett Case*).

In *Kreamer v. Hitchcock,* 207 Md. 454, 115 A. 2d 255, 928, a recent decision dealing with the failure of a widow to make

an election under either Article 46, Section 4, or Article 93, Section 325, of the Code (1951), we recognized the nature of the widow's rights in the husband's estate as fixed by present statutes and the statutory bar of a claim of dower resulting from her failure to make an election or renunciation within the time allowed. (There was a difference of opinion as to what that time was, but so much time had elapsed that she was barred even under the more favorable of the two statutes there involved.)

In the earlier cases in this Court dealing with the bar of Section 325 of Article 93, the validity of the will, as distinguished from the validity of gifts thereunder, does not seem to have been in question. It is somewhat difficult to see how a gift under an invalid will can itself be valid. If the will itself is subsequently held invalid, it would seem that any gift thereunder would necessarily fall. Hence, to use substantially the language of Section 329 of Article 93 of the Code (1951), in effect nothing would pass by such devise, and the surviving spouse would not be bound thereby, whether or not he or she had renounced under Section 325.

We are therefore of the opinion that the bar of Section 325 against the non-renouncing spouse does not prevent him or her from taking his or her share of the estate of the decedent, if the will of the deceased spouse is struck down and intestacy results.

The principal controversy is over the question whether the surviving spouse does or does not have a sufficient interest to maintain a caveat proceeding against the will of the deceased spouse. There is also a claim of estoppel interposed by the husband.

Our statutes do not specify the persons who are entitled to contest the validity of a will; but the rule is firmly established, as was recently restated by Judge Hammond in *Fry v. Yeatman*, 207 Md. 379, at 383, 114 A. 2d 621, at 623: "An interest in the property is the very foundation of the right to caveat." See also: *Brewer v. Barrett*, 58 Md. 587; *Reilly v. Dougherty*, 60 Md. 276; *Meyer v. Henderson*, 88 Md. 585, 41 A. 1073, 42 A. 241; *Safe Deposit & Trust Co. v. Devilbiss*, 128 Md. 182, 97 A. 367; *Johnston v. Willis*, 147 Md. 237, 127

A. 862; *Bruton v. Smith,* 174 Md. 516, 199 A. 517; *Sykes, Contest of Wills in Maryland,* § 4.

In *Fry v. Yeatman, supra,* the interest of the would-be caveatrix was held to be too remote to sustain the contest. The will with which she was immediately concerned was that of her brother; to have an interest in his estate she would have had to file and sustain a caveat to the will of her father or mother, each of whom had died after the death of the brother. She had gone no further at the time of filing a caveat to the brother's will and at the time when her petition was heard than to give notice of an intention to caveat the wills of the parents. Likewise, in *Blake v. Blake,* 159 Md. 539, 150 A. 861, the interest of the would-be caveator to attack a codicil conferring powers of appointment which might be exercised to his detriment through its effect upon his remainder interest under the original will, was held to be too remote. The interest of a general creditor of an heir is also insufficient to support a caveat against the will of the ancestor. *Lee v. Keech,* 151 Md. 34, 133 A. 835. A widow who has released any interest in her husband's estate through an ante-nuptial agreement cannot contest his will. *Maurer v. Naill,* 5 Md. 324; *Edelen v. Edelen,* 11 Md. 415. One appointed as executor under an earlier will has no sufficient interest merely because of that appointment to caveat a later will. *Helfrich v. Yockel,* 143 Md. 371, 122 A. 360; *Johnston v. Willis, supra.* The latter case also holds that the rule is different if one is appointed trustee, at least with extensive powers, under an earlier will. As a general rule, a person having an interest under a prior will has sufficient standing to contest a later will, if the earlier will would be restored if the later one were struck down. *In re De Garmendia's Estate,* 146 Md. 47, 125 A. 897; *Hamill v. Hamill,* 162 Md. 159, 159 A. 247.

The distinctions between various cases in which the interest of the would-be caveators have or have not been held sufficient to warrant a contest for the most part are not of much moment for purposes of the present case; but the underlying rule that there must be an interest is pertinent. So is the rule that the right of the caveator to contest the will must, if challenged, be established before issues as to the validity of the

will are determined. See *Brewer v. Barrett; Reilly v. Dougherty; Meyer v. Henderson; Safe Deposit & Trust Co. v. Devilbiss; Bruton v. Smith; Fry v. Yeatman,* all cited above; *Richardson v. Smith,* 80 Md. 94, 30 A. 570; *Hendrickson v. Attick,* 136 Md. 1, 109 A. 468; *Schmidt v. Johnston,* 154 Md. 125, 140 A. 87; *Sykes, Contest of Wills in Maryland,* § 6. It is within the jurisdiction of the Orphans' Court to determine such questions either upon a hearing in that court or by first sending issues pertaining to such questions to a law court for trial. *Bruton v. Smith, supra; Ades v. Norins,* 204 Md. 267, 103 A. 2d 842; *Sykes,* op. cit. § 6.

The basis upon which the executrix-caveatee's defense on the question of the insufficiency of the husband's interest must rest is that he can obtain either precisely the same thing or at least as much by renouncing the will as by contesting it. For seven months after the probate of the will, that situation existed; but on or about November 30, 1952, his right of renunciation as stated in Section 325 of Article 93 expired, and no extension of it under Section 326 was sought or granted. Five months then remained in which, under Section 372, the will was subject to caveat, and it was during this time that issues were originally transmitted to the Circuit Court, and no question of the husband's capacity to institute or maintain the caveat proceedings had been raised. Both sides were equally bound to know the law and we see no ground of estoppel either in favor of or against the husband with regard to the question of his right to maintain the caveat proceedings. If there had been any, it would seem in any event to have been waived by the consent of both parties to the remand of the case to the Orphans' Court for the determination of that very question.

Whatever may have been the situation up to the end of November, 1952, it is our view that no bar to the husband's caveat proceedings continued thereafter. Accordingly, it is not necessary to decide the interesting question, which is novel in this State, as to whether or not, if the right of renunciation had existed throughout the entire period allowed for a caveat, the ability of the husband to obtain the same share of his wife's estate through renunciation of her will as through a

successful caveat would bar the maintenance of the caveat proceedings. The Legislature has not in terms declared the right of renunciation a bar to the right to contest a will. Desirable as the short, simple and inexpensive procedure for renunciation may be as compared with the delay, cost and bitterness of caveat proceedings, we cannot say that the existence for seven months of an easy and sure way of obtaining all that could be gained by a more difficult and less certain way of getting the same thing destroys the right to follow the latter course of action. If the two methods of procedure were coextensive in time, a different question might be presented.

The capacity of the caveator-appellee to maintain the proceedings, if suspended, having been restored, the order appealed from will be affirmed.

*Order affirmed, with costs.*